PEOPLE v PUBRAT

Docket No. 100563. Argued December 5, 1995 (Calendar No. 6). Decided
    June 4, 1996.

Walter Pubrat pleaded nolo contendere in the Detroit Recorder's
    Court, John Patrick O'Brien, J., to attempted larceny in a building
    and carrying a concealed weapon. At the time the plea was entered
    and at sentencing, the defendant's attorney, James Cohen, was sus-
    pended from the practice of law. The defendant then sought to
    withdraw his plea on that ground, in the Court of Appeals. The
    Court of Appeals, SAWYER, P.J., and S. A. TURNER, J. (WEAVER, J., con-
    curring in the result only), reversed, setting aside the defendant's
    convictions, concluding that because of his suspension Mr. Cohen
    was not an attorney at the time he represented the defendant, the
    defendant's right to counsel thus was violated, and that violation
    can never be harmless error (Docket No. 162555). The people
    appeal.

In an opinion by Chief Justice BRICKLEY, joined by Justices
    CAVANAGH, BOYLE, RILEY, and WEAVER, the Supreme Court *held*:

Collateral attacks on criminal convictions may not be based
    solely on the fact that the defendant's attorney continued to repre-
    sent the defendant after being suspended from the practice of law.

1. The right to counsel is considered fundamental because it is
    essential to a fair trial. The right attaches at all critical stages of
    criminal proceedings. The entry of a plea is a critical stage of the
    proceedings because it may result in the defendant's conviction.
    Likewise, sentencing is a critical stage at which a defendant has a
    right to counsel. The right to counsel also encompasses the right to
    the effective assistance of counsel. A defendant who either was
    denied counsel or denied the effective assistance of counsel is enti-
    tled to relief. In this case, the defendant was not deprived of his
    right to counsel by virtue of the fact that Mr. Cohen had been tem-
    porarily suspended from the practice of law during some parts of
    his representation of the defendant. A suspended attorney is an
    attorney who has been suspended from the practice of law, but is
    still an attorney. A person who becomes an attorney remains an
    attorney until formally disbarred or otherwise permanently sepa-

rated from the bar. A suspension does not alter the formal status as an attorney.

2. It is not sufficient for a defendant to have counsel in name only; counsel must provide effective representation under an objective standard of reasonableness. If there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, the assistance is considered ineffective. The right to counsel is thus substantive, focusing on the actual assistance received, rather than mere form. Representation by a suspended attorney alone does not create a reasonable probability of ineffective assistance. Suspension of an attorney reflects a decision that the attorney is not permitted to practice law during the period of the suspension, rather than a statement that the attorney is not competent to practice law. There is no necessary correlation between disciplinary action and an attorney's ability to practice law. Because attorneys may be suspended from the practice of law for a multitude of reasons, and because there is no necessary correlation between an attorney's suspension and competency, a rule of reversal per se or an automatic remand for a hearing on the effectiveness of counsel would be incorrect.

3. The disciplinary rules are intended to protect the public, the courts, and the legal profession; they are not solely focused on protecting the public from ineffective representation. Because a hearing is not always necessary to safeguard the right to counsel, a rule of automatic remand need not be adopted because of the effect it would have on the courts. The rules will not be interpreted to impose on the courts the burden of ascertaining that each attorney who appears before a tribunal has a valid, current license, in order to avoid the invalidation of their verdicts or to encourage continued practice by suspended attorneys by entertaining appeals seeking reversal simply on the basis of having been represented by an attorney facing disciplinary proceedings.

4. Mr. Cohen's misconduct, although warranting discipline, was unrelated to his representation of the defendant and cannot serve as a ground to challenge the defendant's conviction. The defendant is able to seek relief from judgment if he believes he received ineffective assistance of counsel and, in any such proceeding, may attempt to demonstrate that Mr. Cohen's suspension contributed to shortcomings in his performance. However, the fact that Mr. Cohen was suspended alone does not suffice to obtain relief for the defendant.

Reversed and remanded.

Justice MALLETT, joined by Justice LEVIN, dissenting, stated that representation by an unlicensed attorney casts serious doubt on

the quality of representation a defendant receives. Thus, automatic remand for a hearing under *People v Ginther*, 390 Mich 436 (1973), should be granted in any case in which a defendant, without knowledge, is represented at significant portions of a case by a suspended attorney.

Suspension of an attorney is strong evidence that the attorney is no longer sufficiently interested in the practice of law to adequately defend a client's interest. Given the effect of attorney disciplinary proceedings, representation by a suspended attorney alone is sufficient grounds for a *Ginther* hearing. In this case, the attorney's suspension arising out of a drug conviction, coupled with the continued representation of the defendant in violation of the rules of suspension, is sufficient to raise serious questions about whether the defendant was denied effective counsel, requiring remand to the trial court for an evidentiary hearing.

206 Mich App 340; 520 NW2d 724 (1994) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Robert Radnick*, Assistant Prosecuting Attorney, for the people.

*Peggy K. Madden* for the defendant.

BRICKLEY, C.J. In this case we are called upon to determine the validity of a nolo contendere plea and the resulting sentencing that were conducted while the defendant's attorney was suspended from the practice of law. We conclude that collateral attacks on criminal convictions may not be based solely on the fact that the defendant's attorney continued to represent the defendant after being suspended from the practice of law. Although we recognize that attorneys who continue to practice law in violation of a suspension are engaging in reprehensible conduct, we believe that that conduct is best addressed in a different context. Our concerns about the adequacy of representation as it affects the defendant focus on the

competency of attorneys, rather than on whether they are in good standing with the bar.

I

The defendant had worked for the Chrysler Corporation for over twenty years when he allegedly attempted to leave the building with a computer belonging to the corporation. He denied that he intended to permanently deprive the corporation of the computer. He was arrested and charged with larceny in a building and carrying a concealed weapon. James Cohen entered an appearance as his attorney on May 1, 1992, the day after his arrest. At the time, Mr. Cohen was facing disciplinary proceedings stemming from his guilty plea to the high misdemeanor of attempted conspiracy to manufacture, deliver, or possess marijuana with the intent to deliver or possess marijuana. He was suspended from the practice of law for 119 days; however, a stay was automatically entered upon Mr. Cohen's petition for review. A lengthy series of rehearings and appeals resulted in the continuation of the stay. Accordingly, Mr. Cohen was not under suspension at the time he commenced representation of the defendant.

This Court denied Mr. Cohen's application for leave to appeal his suspension on October 6, 1992, and the suspension accordingly took effect. 441 Mich 1201. When the defendant entered a *nolo contendere* plea to attempted larceny in a building and carrying a concealed weapon on November 17, 1992, Mr. Cohen was representing him despite being under suspension. On December 8, 1992, this Court denied Mr. Cohen's motion for yet another stay of his suspension, thereby exhausting all possibility of relief. However, he con-

tinued to represent the defendant. On December 11, 1992, the defendant was sentenced to five years probation while still represented by the suspended Mr. Cohen.

The defendant appealed in the Court of Appeals, seeking leave to withdraw his plea on the ground that he was not represented by an attorney who was licensed to practice law. The Court of Appeals reversed the defendant's conviction, reasoning that a disciplinary suspension reflects a lack of either competency or ethics. The Court of Appeals concluded that because of the suspension the defendant was represented by a person who was not an attorney, his right to counsel was violated, and that violation can never be harmless error. Accordingly, the Court of Appeals set aside the defendant's conviction. 206 Mich App 340; 520 NW2d 724 (1994).

II

The defendant asserts that he was deprived of his right to counsel because Mr. Cohen was suspended from the practice of law during critical stages of his representation. The defendant urges that this Court adopt a rule of reversal per se, so that no conviction is valid if obtained against a defendant whose attorney's license was suspended during the representation. On appeal, the plaintiff argues that the Court should focus on the adequacy of representation case by case, rather than establish a per se rule.

The right to counsel is considered fundamental because it is essential to a fair trial. *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963). The right attaches at all critical stages of the proceedings. The entry of a plea is a critical stage of the pro-

ceedings because it results in the defendant's conviction. Likewise, the sentencing is a critical stage at which a defendant has a right to counsel. *People v Eason*, 435 Mich 228; 458 NW2d 17 (1990); *People v Wakeford*, 418 Mich 95; 341 NW2d 68 (1983). Our analysis in this case is not influenced by the fact that Mr. Cohen's license was suspended at the times the defendant entered a plea and was sentenced, rather than during a trial.

The right to counsel also encompasses the right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). If the defendant either was denied counsel or denied the effective assistance of counsel, he is entitled to relief.

III

A. THE RIGHT TO AN ATTORNEY

The Court of Appeals concluded that Mr. Cohen was not an attorney during the time he was suspended. We reject its reasoning and conclude that the defendant was not deprived of his right to counsel by virtue of the fact that Mr. Cohen had been temporarily suspended from the practice of law during some parts of his representation of the defendant. The defendant's argument is mainly syllogistic: the defendant has the right to an attorney; a suspended attorney is not an attorney; therefore, the right was violated. However, the syllogism fails because its second premise is inaccurate. A suspended attorney is an attorney who has been suspended from the practice of law,

but is still an attorney.[1] A person who becomes an attorney remains an attorney until formally disbarred or otherwise permanently separated from the bar. A suspension does not alter the formal status as an attorney.

This is not a case in which a lay person has masqueraded as an attorney. Although we do not address the question here, it is possible that we would reach a different result if the defendant's counsel had never been admitted to the bar. A rule of reversal per se has been adopted by other jurisdictions that have considered that question. Those courts have declined to reach the question whether the person pretending to be an attorney actually provided adequate representation. The reversal is based on the fact that the person technically was not an attorney at all.[2] However, the conclusion that a person was not an attorney for right-to-counsel purposes is based on the fact that the person never became an attorney, not on the basis of a suspension. Thus, the reasoning of these cases does not support the adoption of a rule of reversal per se on the grounds that a suspended attorney is not an attorney. A suspension is irrelevant to that inquiry.

---

[1] This holding does not suggest that we do not take seriously the requirements for admission to the bar. Rather, it demonstrates our deference to those procedures. Once someone has overcome the hurdles to gain admission to the bar of this state, we will not lightly set aside that admission.

[2] See, e.g., *Solina v United States*, 709 F2d 160 (CA 2, 1983) (the outright violation of a defendant's right to counsel when counsel was never admitted to the bar, despite a reasonably competent performance); *State v Smith*, 476 NW2d 511 (Minn, 1991) (the Sixth Amendment requires reversal per se when counsel was never admitted to the bar); *People v Felder*, 47 NY2d 287; 418 NYS2d 295; 391 NE2d 1274 (1979) (automatic reversal was limited to representation by a person never admitted to practice).

B. THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

The second potential source of relief for the defendant is his claim that he was deprived of the effective assistance of counsel. Although it is necessary, it is not sufficient for a defendant to have counsel in name only. Counsel must provide effective representation under an objective standard of reasonableness. If there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," the assistance is considered ineffective. *Strickland,* 466 US 694; *People v Pickens,* 446 Mich 298, 314; 521 NW2d 797 (1994). The right to counsel is thus substantive, focusing on the actual assistance received, rather than mere form. We decline to hold that representation by a suspended attorney alone creates a reasonable probability of ineffective assistance.

The Court of Appeals based its decision partly on an attempt to distinguish between suspensions for administrative and financial reasons, and those for substantive and disciplinary reasons. It held that a suspension for disciplinary reasons reflects a lack of either competency or ethics in the attorney. Thus, in *People v Brewer,* 88 Mich App 756; 279 NW2d 307 (1979), the Court of Appeals remanded for a hearing regarding whether the defendant had been deprived of the effective assistance of counsel when he was represented by an attorney who had been suspended for failure to pay bar dues. The Court did not reach the question whether a suspension for the failure to pay dues necessarily reflects on an attorney's ability to practice law. However, it concluded that Mr. Cohen's suspension based on the drug offense consti-

tuted a positive determination that he was not fit to practice law.

We reject the Court of Appeals distinction between administrative and substantive discipline. The dispositive issue is the attorney's effectiveness as counsel, rather than the nomenclature used to describe the disciplinary proceedings. Either administrative or substantive discipline may reflect on an attorney's professional competency, and either may also reflect shortcomings that are purely personal. For example, the failure to pay bar dues may be an intentional violation of the rule which demonstrates that the attorney does not accord proper weight to the rules. That failure also may raise the possibility that an attorney will neglect a client's interests as well because the attorney is unable or unwilling to keep track of obligations. Thus, administrative discipline may reflect on an attorney's fitness to practice law, while substantive discipline will not always demonstrate professional incompetence. For example, an assaultive offense committed by an attorney reveals personal flaws, but does not necessarily reflect on the attorney's professional capacities. We accordingly reject the conclusion that certain suspensions always implicate an attorney's fitness to practice law.

The suspension of an attorney reflects a decision that the attorney is not permitted to practice law during the period of the suspension, rather than a statement that the attorney is not competent to practice law. There is no necessary correlation between disciplinary action and an attorney's ability to practice law, and we decline to create such a connection as a matter of law. Again, this conclusion is supported by

results reached by certain other jurisdictions that have grappled with the same questions.[3]

Attorneys may be suspended from the practice of law for a multitude of reasons, which persuades us that a rule of reversal per se would be incorrect. Also, because there is no necessary correlation between an attorney's suspension and competency, we do not automatically remand for a hearing on the effectiveness of counsel. Such a hearing will not always be appropriate or necessary in the context of a suspended attorney. If a convicted defendant is convinced that an attorney's representation fell below an objective standard of reasonableness, the appropriate procedure is to seek a *Ginther* hearing on the effective assistance of counsel.[4] We also do not foreclose the possibility that the suspension of one's attorney may support a finding of ineffective assistance of counsel following such a hearing, as where an attorney sought to hurry proceedings unduly in order to decrease the possibility of exposure.[5]

---

[3] *In re Johnson*, 1 Cal 4th 689, 697; 4 Cal Rptr 2d 170; 822 P2d 1317 (1992) ("a conclusion that an attorney is not a fit person to practice law is not a determination that the attorney lacks professional competence"); see also cases in which suspensions for various reasons were held not to violate the right to counsel, e.g., *Waterhouse v Rodriguez*, 848 F2d 375 (CA 2, 1988), cert den 493 US 1003 (1989) (an attorney misappropriated client funds); *Reese v Peters*, 926 F2d 668 (CA 7, 1991) (an attorney failed to pay dues). Although some jurisdictions have concluded that a suspension renders an attorney incompetent, e.g., *People v Brigham*, 208 Ill App 3d 982; 567 NE2d 735 (1991) (an attorney was suspended for failure to pay fees), we are convinced that the better rule is that there is no necessary correlation.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] Cf. *Solina*, n 2 *supra* at 164 (a person masquerading as counsel may avoid presenting a vigorous defense for fear that lack of credentials will be discovered).

A closer examination of the application of the disciplinary rules supports our conclusion that there is no necessary correlation between an attorney's suspension and competency. The offense for which Mr. Cohen was suspended occurred years before his representation of the defendant. His suspension was automatically stayed upon his petitioning for review, as are all suspensions under 179 days in length. MCR 9.115(K). Although we recognize that discipline should not attach until there has been a determination that it is warranted, it would be possible to establish a rule providing for automatic suspension upon conviction of a misdemeanor such as Mr. Cohen's offense.[6] The lack of such a rule demonstrates that the offense alone is not considered sufficient to render the offending attorney unfit to practice. Also, the fact that suspensions are automatically stayed shows that the decision to suspend, even when made, does not imply that the attorney is not competent to practice law.

The disciplinary rules are intended to protect the public, the courts, and the legal profession. MCR 9.105. They are not solely focused on protecting the public from ineffective representation. The legal profession must be protected from a perception that drug dealers are accepted into it with impunity, which alone would justify Mr. Cohen's suspension. We must avoid the "irreparable harm done to the Bar and to public confidence in the administration of justice when persons known to be convicted of crimes continue to hold themselves out as officers of the court."

---

[6] Attorneys convicted of a felony are automatically suspended. MCR 9.120(B)(1).

*State Bar Grievance Administrator v Sauer*, 390 Mich 449, 456; 213 NW2d 102 (1973).

Because a hearing is not always necessary in order to safeguard the right to counsel, we are also persuaded against adopting a rule of automatic remand because of the effect such a rule would have on the courts. If the hearing was necessary to protect a fundamental right, we would not "subordinate[ ] [it] to judicial efficiency." *Post* at 605. However, procedural concerns are an appropriate consideration where, as here, the right is not a risk. We will not interpret the rules in a way that places an undue burden on the courts they are designed to protect. We will not impose on the courts the burden of ascertaining that each attorney who appears before a tribunal has a valid, current license, in order to avoid the invalidation of their verdicts. Also, we will not encourage continued practice by suspended attorneys by turning them into "walking reversals," so that any client may claim reversal on the basis simply of having chosen an attorney facing disciplinary proceedings.[7]

Mr. Cohen's compounded offense of continuing to practice while under suspension likewise does not necessitate the conclusion that his representation of the defendant fell below the objective standard of reasonableness. This type of conduct unbecoming a lawyer may well require further proceedings against Mr. Cohen, but those proceedings are a separate matter and may not, under these circumstances, be used to attack the validity of the conviction of the defend-

---

[7] The automatic remand rule advocated by the dissent would have a similar effect. The rule would encourage suspended attorneys to continue representation of criminal defendants, knowing that the client would receive at least a *Ginther* hearing.

ant. The consequences of Mr. Cohen's actions are to be borne by him alone, rather than used to affect the conviction of his client. If the defendant believes that Mr. Cohen failed to provide adequate representation, he may seek relief from judgment by asserting the ineffective assistance of counsel and requesting a *Ginther* hearing. The possibility that an attorney's suspension may sometimes reflect on the effectiveness of representation does not justify a rule of reversal per se or automatic remand for a hearing on effectiveness.

IV

In conclusion, we find that Mr. Cohen's misconduct, although certainly warranting discipline, was unrelated to his representation of the defendant and cannot serve as grounds to challenge the conviction. We neither find nor create a necessary correlation between an attorney's suspension and the ability to provide adequate representation. The defendant is not prejudiced in his ability to seek relief from judgment if he believes he received ineffective assistance of counsel, and in any such proceeding he may attempt to demonstrate that Mr. Cohen's suspension contributed to shortcomings in his performance. However, the fact that his attorney was suspended alone does not suffice to obtain relief for the defendant. The decision of the Court of Appeals is reversed, and we remand the case for reinstatement of the defendant's convictions.

CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred with BRICKLEY, C.J.

MALLETT, J. (*dissenting*). I disagree with the majority's conclusion that "collateral attacks on criminal convictions may not be based solely on the fact that the defendant's attorney continued to represent the defendant after being suspended from the practice of law." *Ante* at 591. Rather, while I would not reverse per se, I would grant an automatic remand in any case in which a defendant, without knowledge, is represented at significant portions of the case by a suspended attorney.

I

Defense attorney James Cohen faced disciplinary proceedings and was ultimately suspended from the practice of law because of his plea of guilty of the high misdemeanor of attempted conspiracy to manufacture, deliver, or possess marijuana with the intent to deliver or possess marijuana.[1] Despite his suspension, Mr. Cohen represented the defendant in criminal proceedings. Against this backdrop, this Court must consider whether defendant was denied his constitutionally guaranteed right to counsel.

II

There is a fundamental right to counsel afforded by the Sixth Amendment. *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

> The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays

---

[1] According to the prosecution brief, Mr. Cohen remains suspended to this day.

the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." [*Strickland v Washington*, 466 US 668, 685-686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (citations omitted).]

The United States Supreme Court recognizes that representation of criminal defendants consists of basic duties including, but not limited to, a duty of loyalty, a duty to avoid conflicts of interest, a duty to advocate, and a duty to possess the skill and knowledge necessary to "render the trial a reliable adversarial testing process." *Id.* at 688. Effectiveness of representation determinations are made in light of these duties and are guided by the prevailing norms of professional practice. *Id.* Courts universally acknowledge "that the constitutional guarantee of the right to effective assistance of counsel deserves the utmost protection . . . ." *People v Brewer*, 88 Mich App 756, 761; 279 NW2d 307 (1979). See also *Beets v Scott*, 65 F3d 1258 (CA 5, 1995); *Gideon, supra*; *Solina v United States*, 709 F2d 160 (CA 2, 1983).

III

Individuals endure rigorous education, examination, and character and fitness investigation to become members of the state bar.[2] Persons who comply with the strict licensing procedures set forth by the Michigan Supreme Court have the "exclusive right to designate themselves as 'attorneys and counsel-

---

[2] "Michigan, as all other states, regulates the practice of law by statute. . . . These requirements include educational, character and fitness, and examination components. MCLA 600.934, 600.937, 600.940; MSA 27A.934, 27A.937, 27A.940." *State Bar of Michigan v Cramer*, 399 Mich 116, 132; 249 NW2d 1 (1976).

ors . . . .' "[3] In return for the privilege to practice
law, "licensed attorneys are subject to discipline,
including loss of license for unprofessional conduct.
MCLA 600.904; MSA 27A.904." *State Bar of Michigan
v Cramer*, 399 Mich 116, 132; 249 NW2d 1 (1976).
Disciplinary procedures exist to protect the public
and ensure that only attorneys who continue to meet
the high standards required by the state bar will prac-
tice law.[4] The suspension of an attorney evidences the
state's determination that the attorney is unfit to rep-
resent either the public or the legal profession. MCR
9.105.

The majority appears to say that even though this
attorney is deemed unfit to practice and is suspended,
he may continue to represent this defendant. The
position articulated by the majority does not make
good legal sense. The majority's opinion appears, at
least in part, to be based on its fear of burdening the
courts with the duty of "ascertaining that each attor-
ney who appears before a tribunal has a valid, current
license . . . ." *Ante* at 600. The right to counsel is

---

[3] MCL 600.901; MSA 27A.901.

[4] See *In re Grimes*, 414 Mich 483; 326 NW2d 380 (1982). The Court of
Appeals noted:

> The state has undertaken elaborate means to determine who can
> be an attorney. The Supreme Court has developed extensive pro-
> cedures by which individuals who wish to become attorneys must
> meet certain stringent educational requirements, must undergo a
> background check to determine their character and fitness to be an
> attorney, and must submit to a bar examination to determine their
> competence to be an attorney. Furthermore, the Supreme Court
> has in place an elaborate mechanism to ensure that attorneys, once
> licensed, remain fit to practice law, suspending or revoking the
> licenses of those attorneys who prove themselves unfit. [206 Mich
> App 340, 344-345; 520 NW2d 724 (1994).]

critical and should not be subordinated to judicial efficiency.[5] As the Court of Appeals stated:

> In our view, the state cannot now disavow those procedures and restrictions on the practice of law merely because it is convenient to do so in order to avoid the repercussions of having allowed an unlicensed individual to play the role of an attorney in a criminal prosecution. [206 Mich App 340, 345; 520 NW2d 724 (1994).]

The suspension of an attorney results from an administrative determination that the attorney is unfit to practice law. If the state believes an attorney is unfit to practice law, then I believe that a defendant represented by a suspended attorney is automatically entitled to a review of the effectiveness of that attorney's representation.

IV

I would remand this case for a *Ginther*[6] evidentiary hearing on the effectiveness of Mr. Cohen's representation in this case. I agree with the holding of the Court of Appeals in *Brewer* that suspension of an

---

[5] The majority believes that the purpose of disciplinary proceedings is to "avoid the 'irreparable harm done to the Bar and to public confidence in the administration of justice when persons known to be convicted of crimes continue to hold themselves out as officers of the court.' *State Bar Grievance Administrator v Sauer*, 390 Mich 449, 456; 213 NW2d 102 (1973)." *Ante* at 599-600. It is unfortunate that the majority does not recognize the equally crushing harm done to the bar and the public confidence when this Court presumes that representation by a suspended attorney is justified because it is procedurally inefficient to hold otherwise. We must remember that "[r]esponsibility for ensuring that the conduct of attorneys comports with standards of professional responsibility rests with the legal profession and, ultimately, with this Court." *State Bar Grievance Administrator v McWhorter (On Rehearing)*, 407 Mich 278, 288; 284 NW2d 472 (1979). On issues of attorney conduct, we are the final arbiter of which characteristics will shape and define our legal profession.

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

attorney is "strong evidence that such attorney is no longer sufficiently interested in the practice of law to adequately defend his client's interests." *Id.* at 762. Given the effect of disciplinary proceedings, representation by a suspended attorney alone is sufficient grounds for a *Ginther* hearing.[7] In the instant case, Mr. Cohen's suspension arising out of a drug conviction, coupled with the continued representation of the defendant in violation of the rules of suspension, is enough to raise a serious question about whether defendant was denied effective counsel. A contrary holding by this Court mocks the notion of a constitutionally guaranteed right to counsel and weakens the significance of the licensing requirements of the legal profession.

V

In light of the above, I believe that representation by an unlicensed attorney casts serious doubt on the quality of representation a defendant receives. Consequently, I would modify the Court of Appeals decision and remand this case to the trial court for an evidentiary hearing consistent with this opinion.

LEVIN, J., concurred with MALLETT, J.

---

[7] Although I prefer an automatic remand approach, the Ohio Court of Appeals afforded a defendant reversal per se under facts similar to the instant case. *State v Newcome,* 62 Ohio App 3d 619; 577 NE2d 125 (1989) (the defendant did not receive his constitutional right to the assistance of counsel at the time he pleaded guilty because he was represented by counsel who was suspended from the practice of law).