# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLARENCE EDWARD ROSS,

        Defendant-Appellant.

UNPUBLISHED
January 5, 2016

No. 321353
Kalamazoo Circuit Court
LC No. 2012-001925-FC

AFTER REMAND

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

This matter returns to us after remand to the trial court for a *Ginther*[1] hearing on defendant's claim that his trial counsel was ineffective for failing to secure the trial presence of two eyewitnesses to the subject shooting. For the reasons stated in this opinion, we affirm.

Defendant was convicted of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), arising out of a shooting at a Quick Stop convenience store in Kalamazoo, Michigan. He was also convicted of solicitation to commit murder, MCL 750.157b(2), a charge involving attempts to arrange a second murder. We affirmed his conviction and sentence on the solicitation to commit murder charge. *People v Ross*, unpublished opinion per curiam of the Court of Appeals, issued June 30, 2015 (Docket No. 321353), p 1. With regard to defendant's murder and felony-firearm convictions, we remanded for a *Ginther* hearing on defendant's claim that trial counsel was ineffective for failing to secure the trial presence of two eyewitnesses to the Quick Stop shooting whose descriptions of the shooter, as set forth in the police reports, were inconsistent with defendant's actual height and weight.

The two witnesses were Mike Stanfill and Sargit Singh. According to the police reports, Stanfill was in an apartment across the street from the shooting and Singh was a cashier working at the Quick Stop. Neither man could be located to provide testimony at the *Ginther* hearing despite the efforts of a private investigator appointed by the trial court to locate them. The trial

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

court denied defendant's motion to adjourn the hearing in order to undertake additional efforts to locate Stanfill.[2]

At the *Ginther* hearing, defendant's trial counsel, testified to his efforts to locate the two witnesses before trial and his reasons for not taking additional steps to secure their presence for trial. After hearing the evidence, the trial court denied defendant's renewed motion for a new trial, finding that defense counsel was not ineffective for failing to secure Stanfill and Singh for trial.[3]

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004).

In our first opinion, we explained:

Police reports in the lower court record indicate that Sargit Singh, a Quick Stop clerk, told police through an interpreter that the shooter was "a 19 to 20 year old black male approximately 5'11" with an average to skinny build." Mike Stanfill, who apparently witnessed the shooting from across the street, described the shooter in two police reports "as a tall/skinny [black male]" and "taller than 5-8, [and] thin." [*Ross*, unpub op at 3 (alterations in original).]

---

[2] Defendant argues that the trial court erred in denying its request for an adjournment to make additional efforts to locate Stanfill for the *Ginther* hearing. Decisions on adjournments are reviewed for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). Here, the trial court denied the request, concluding that the testimony presented was sufficient for the court to determine whether defense counsel was ineffective for failing to secure the witnesses for trial. Given that defense counsel testified about his efforts to locate the witnesses and his reasons for not making additional efforts, we cannot say that the trial court abused its discretion in denying the requested adjournment. The record, even without the testimony, is sufficient to evaluate defendant's claim.

[3] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Defense counsel testified that he had read the police reports before trial. He also testified that—contrary to Stanfill and Singh's descriptions—defendant was in his 30s, was short, and had a stocky build. Thus, the witnesses' testimony, if consistent with the police reports and believed by the jury, would have been exculpatory.

Defense counsel testified that both he and his private investigator attempted to locate Stanfill before trial. Their attempts, however, were unsuccessful. Defense counsel testified that he decided not to pursue Stanfill as a witness "as a matter of strategy." He explained that he believed Stanfill's account lacked credibility given that Stanfill's ability to see the shooting was impeded because he was playing guitar on the second floor of a house about 100 yards from the Quick Stop and because it was "very dark" and several lights in the vicinity were not working. Further, defense counsel concluded that Stanfill made conflicting statements in the police reports with regard to whether he actually witnessed the shooting. This decision, although made without speaking to Stanfill, was made after attempts to locate him had failed. Moreover, the decision was made while defense counsel believed that Singh, another witness who reported a potentially exculpatory description of the shooter, was going to testify at trial. Under these circumstances, we cannot say that defense counsel's performance with regard to Stanfill fell below and objective standard of reasonableness. *Swain*, 288 Mich App at 643.

Even assuming *arguendo* that defense counsel's failure to call Stanfill as a witness was ineffective, we cannot say that this failure resulted in a reasonable probability that the jury would have reached a different verdict. See *id*. It is not at all clear that his testimony would have been significantly helpful to the defense. Although he reported to the police that the shooter was tall and thin—which defendant is not—he also reported that he did not see the shooting. Further, his testimony would have been subject to effective impeachment based on his distance from the shooting and the lighting conditions at the time of the shooting.

The situation is different with regard to Singh, the witness defense counsel believed would provide stronger testimony. Trial counsel testified that he did not make any particular efforts to have Singh available for trial, although he added that his investigator had tried to locate him. He testified that he did not attempt to subpoena Singh (or Stanfill), because he thought that the prosecution was required to produce the witness pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Defense counsel was incorrect. *Brady* prohibits the prosecution from suppressing "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. However, *Brady* does not require the prosecution to produce all known witnesses. Instead, the prosecutor's duty under MCL 767.40a, the res gestae statute, "is to provide notice of known witnesses and reasonable assistance to locate witnesses *on a defendant's request*." *People v Gadomski*, 232 Mich App 24, 36; 592 NW2d 75 (1998) (emphasis added). "Put in other terms, the prosecutor's duty to produce res gestae witnesses was replaced with the duty to provide notice of known witnesses and to give reasonable assistance in the locating of witnesses if a defendant requests such assistance." *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Further,

> A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial. A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced

despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [*People v Eccles*, 260 Mich App 378, 388; 677 NW2d 76 (2004) (citations omitted).]

In this case, defense counsel did not attempt to subpoena Singh because he erroneously believed the prosecution had a duty to procure Singh for trial. Moreover, when he learned that Singh was in India and would not be available for trial, he did not request a due diligence hearing nor did he request a missing witness instruction. Accordingly, we conclude that defense counsel's failure to subpoena Singh fell below an objective standard of reasonableness. *Swain*, 288 Mich App at 643.

However, defendant cannot establish that, but for counsel's failure to pursue Singh's testimony, there is a reasonable probability that the outcome would have been different. See *id*. Singh's statement, which was made through an interpreter and recorded in the police reports by a police officer, indicated that the shooter was "a 19 to 20 years old black male approximately 5'11" with an average to skinny build." While Singh's probable testimony, if consistent with the police reports' record of his statements, might have led to a different outcome, defendant is unable to establish that Singh could have been produced for trial, even if additional efforts were undertaken to locate him. Singh had left his job at the Quick Stop and his former employer was unaware of his whereabouts. Attempts to locate him by his name were not successful because, as the investigator testified, "Sargit Singh" was the Indian equivalent of the name John Smith. The investigator testified that he could not even estimate the number of Sargit Smiths that came up when he ran a Google search. Moreover, it was determined on the first day of trial that Singh may have traveled to India either for vacation or because he was deported as a sex offender. Further, at the *Ginther* hearing, defendant did not put forward evidence of other actions counsel could have taken that would have secured Singh's presence at trial. Accordingly, we must conclude that defendant has not established that, but for counsel's error, the outcome would have been different. *Id*.[4]

Defendant also argues that he is entitled to a *Crosby*[5] hearing pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). However, because the argument was not presented in his original appellate brief, and because the argument falls outside the scope of the remand order, it is not subject to consideration. *People v Burks*, 128 Mich App 255, 257; 339 NW2d 734 (1983) ("Issues outside the scope of a remand order will not be considered on appeal following remand."). Moreover, the argument does not warrant reversal even upon substantive inspection. Defendant asserts that offense variables (OV) 1 and 3 were not established beyond a reasonable doubt by the jury's verdict. However, OV 1 addresses aggravated use of a weapon.

---

[4] Defense counsel attempted to have Singh's statements in the police reports introduced into evidence through a hearsay exception. However, the trial court did not allow the evidence, finding that the statement lacked sufficient indicia of reliability. On appeal, defendant did not argue that the trial court's decision was erroneous.

[5] *United States v Crosby*, 397 F3d 103 (CA 2 2005).

MCL 777.31. A score of 25 points is required if "[a] firearm was discharged at or toward a human being[.]" MCL 777.31(1)(a). The jury convicted defendant of first-degree premeditated murder and felony-firearm, which together establish that someone died because of defendant's use of a firearm. Further, OV 3 addresses physical injury to a victim. MCL 777.33. A score of 25 points is required if a victim sustained a "[l]ife threating or permanent incapacitating injury[.]" MCL 777.33(1)(c). Here, an element of the murder conviction is that someone died, which certainly qualifies as permanent incapacitating injury. Accordingly, we deny defendant's motion for a *Crosby* remand because the trial court's scoring decision was authorized by the jury's verdict.

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro