# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CEDRIC RAYNARD JOYCE,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2017

No. 329973
Wayne Circuit Court
LC No. 15-001327-01-FC

Before: MARKEY, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of first-degree premeditated murder, MCL 750.316(1)(a). The trial court sentenced defendant to life in prison without the possibility of parole. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This appeal arises out of the fatal stabbing of Glenn Roosevelt Hutson in the early morning hours of December 30, 2014, in a home in Detroit, Michigan. At trial, four eyewitnesses testified that defendant, known by his street name of "Bill Blast," or "Blast," stabbed Hutson multiple times in an upstairs bedroom, as well as at the bottom of the stairs on the first floor.

During the prosecution's case-in-chief, the trial court conducted a due diligence hearing regarding the whereabouts of missing eyewitness Kesdeisha Turner, who had testified previously at the preliminary examination in this case. Detroit Police Department Detective Jarmiare McEntire testified at this hearing regarding his efforts to locate Turner. After hearing arguments from both parties, the trial judge found that Turner was legally unavailable to testify under MRE 804(a)(5). Finding that defense counsel had previously had the opportunity to cross-examine Turner at the preliminary examination, the trial court admitted Turner's preliminary examination testimony as evidence at trial, pursuant to MRE 804(b)(1).

On appeal, defendant challenges the admission of this evidence, arguing that the prosecution did not demonstrate due diligence in attempting to secure Turner's presence at trial and that the admission of Turner's preliminary examination testimony violated his right to confrontation under the Sixth Amendment. We disagree.

-1-

Defendant's Sixth Amendment challenge correctly acknowledges that, when admitted in evidence during defendant's trial, Turner's preliminary-examination testimony was hearsay. Hearsay, generally defined as "a statement, other than the one made by the declarant when testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c), is inadmissible at trial, unless it meets the requirements of an exception set forth in the Michigan Rules of Evidence, MRE 802.

MRE 801(b)(1)'s exception for former testimony provides that, when the trial court properly declares a declarant unavailable to testify at trial, that declarant's testimony "at another hearing of the same or a different proceeding" is admissible, but only if "the party against whom the testimony is now offered . . . had the opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." A declarant is "unavailable," *inter alia*, when the declarant is "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). In other words, whether a declarant is unavailable is determined by whether the prosecution has used due diligence in attempting to procure that declarant for trial. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). The test for whether the prosecution has used due diligence "is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

At the due-diligence hearing, Detective McEntire testified that he took charge of this case in April, 2015 and was given a trial subpoena for Turner. Thereafter, Detective McEntire painstakingly searched for Turner. Detective McEntire called the phone number Turner gave during her police interview; however, Turner did not return the call. Next, Detective McEntire went by the address Turner provided and spoke with Turner's aunt, who advised him that she had not seen Turner in some time and, in fact, rarely spoke with her. Detective McEntire next checked local hospitals and morgues, but could not find Turner. Detective McEntire utilized the Law Enforcement Information Network (LEIN) network, but was not able to locate any warrants for Turner, or find her in custody. Eventually, unnamed members of Turner's family told Detective McEntire that she may have gone to seek treatment for substance abuse. Based on this information, Detective McEntire reached out to several area hospitals, local women's shelters, and "other facilities" to determine whether they were treating Turner. Referring to patient privacy laws, none of these facilities would confirm or deny that Turner was under their care. Detective McEntire obtained a warrant and a witness detainer order for Turner's arrest, but was ultimately unable to locate Turner.

We agree with the trial court that this record adequately shows that the prosecution exercised due diligence in attempting to locate Turner for trial. Although defendant argues that the police should have requested more help from the prosecution or the trial court when several health facilities refused to disclose whether they were treating Turner, the trial court did issue a warrant for Turner's arrest and a witness detainer order. Beyond these measures, neither the trial court nor the prosecution could have provided much more assistance.

Defendant also argues that the police should have reached out to DHHS to ascertain whether Turner was receiving public assistance to pay for any substance abuse treatment that she was receiving. Although, in theory, it was possible for Detective McEntire to reach out to

DHHS, the prosecution need not have done everything possible to locate Turner, but only those steps reasonably calculated to procure Turner for trial. On appeal, defendant has provided this Court with no explanation from which we may conclude that contacting DHHS was a reasonable step towards procuring Turner's testimony at trial. Indeed, defendant cites no record evidence indicating that Turner was likely to be on public assistance or that DHHS somehow held information about her possible substance abuse treatment. Therefore, in light of the steps taken by Detective McEntire to locate Turner, based on the information he had, we conclude that he acted diligently in his attempts to locate her and that the trial court properly found Turner to be unavailable, pursuant to MRE 804(a)(5).

As noted above, the prior testimony of a now unavailable witness may be admitted at trial if the former testimony was "given as a witness at another hearing of the same or a different proceeding" and "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW3d 797 (2007).

Turner's prior testimony was given at defendant's preliminary examination hearing, and therefore satisfies the requirement in MRE 804(b)(1) that the prior testimony come from a hearing of the same or different proceeding. At the preliminary examination, defense counsel had the opportunity to cross-examine Turner, and did cross-examine Turner, regarding her substance abuse on the night in question, her memory of the incident, what defendant had been wearing and any distinguishing characteristics that defendant had. Defense counsel was not cut off, or limited in any way, during his cross-examination of Turner at the preliminary examination. At trial, defense counsel similarly cross-examined the prosecution's other witnesses regarding their memory of the night, their substance abuse issues, how those issues affected their memory of the incident, their relationship or familiarity with defendant, and any distinguishing characteristics defendant had. This record confirms that defendant had an opportunity and similar motives to develop Turner's testimony.

Given this record, we conclude that the trial court did not err by admitting Turner's preliminary examination testimony at trial pursuant to MRE 804(b)(1). Properly admitted under MRE 804(b)(1), this testimony does not run afoul of defendant's right to confrontation under the Sixth Amendment. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009) (stating that "[f]ormer testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony.").

Defendant next argues that he was unconstitutionally deprived of the effective assistance of counsel where defense counsel failed to object to his warrantless arrest. We disagree. Because defendant did not request a *Ginther*[1] hearing or move for a new trial, our "review of this

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

issue is limited to mistakes apparent on the appellate record." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94. "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id.*

Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."[2] The right to counsel plays a crucial role in the Sixth Amendment's guarantee of a fair trial by ensuring that the defendant has access to the "skill and knowledge" necessary to respond to the charges against him or her. *Strickland v Washington*, 466 US 668, 685; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The right to counsel also encompasses the right to the effective assistance of counsel." *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). See also *Strickland*, 466 US at 686.

An appellate court is required to reverse a defendant's conviction when defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 US at 687. A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

On appeal, defendant argues that defense counsel should have contested the validity of the defendant's arrest by moving to suppress evidence recovered from defendant during his arrest. Defendant correctly points out that, at the time of his arrest, a magistrate had yet to sign a warrant for his arrest. Nonetheless, we conclude that defendant's arrest was valid, despite the unsigned warrant.

"A police officer may arrest a person without a warrant if he or she has reasonable cause to believe that a felony has been committed and that the particular person committed it." *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011), citing MCL 764.15(1)(d). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cohen*, 294 Mich App at 75 (internal quotation marks and citation omitted). "This probable cause standard is a practical, nontechnical conception judged from the totality of the circumstances before the arresting officers." *Id.* (internal quotation marks and citation omitted).

In this case, the police had probable cause to arrest defendant. Several eyewitnesses gave statements to detectives regarding what had happened, and who had done it. Each of the witness

---

[2] See also Const 1963, art 1, § 20. Our Constitution's guarantee of the right to counsel is coextensive with that guaranteed by the federal Sixth Amendment. *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994).

statements identified Hutson's attacker by the street name, "Bill Blast," and provided a similar physical description, specifically that the suspect had a visible eye impairment, as does defendant. Detective Raby testified that he used public databases and police databases, targeting the area where the murder took place, to identify defendant as "Bill Blast." Detective Raby testified that two eyewitnesses to the murder identified defendant as "Bill Blast" from a photograph. Thus, based on the totality of the circumstances, the police had probable cause to identify defendant as the individual who had murdered Hutson.

Because probable cause existed to arrest defendant for Hutson's murder, defendant's arrest was constitutionally valid and any motion to suppress evidence from that arrest would have been futile. Counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660.

Affirmed.


/s/ Jane E. Markey
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle