*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

  Plaintiff-Appellee,

v

JEROD ANTHONY BLOND,

  Defendant-Appellant.

UNPUBLISHED
December 12, 2019

No. 344434
Genesee Circuit Court
LC No. 17-040839-FC

PEOPLE OF THE STATE OF MICHIGAN,

  Plaintiff-Appellee,

v

SERGIO SHARROD HARE,

  Defendant-Appellant.

No. 344440
Genesee Circuit Court
LC No. 17-040842-FC

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendants Jarod Anthony Blond and Sergio Sharrod Hare were tried jointly, before a single jury, which found both defendants guilty of first-degree murder, assault with intent to commit murder, and firearms charges. Both defendants argue on appeal that they received ineffective assistance of counsel. Because defendants' arguments are without merit, we affirm.

## I. BACKGROUND

These cases, consolidated at trial and on appeal, arise from an incident resulting in the shooting death of Tavion Wells, and the nonfatal shooting assaults of Justice Thomas and Tamyra Thompson, early in the morning of November 19, 2016. Thomas testified that she was in her car parked outside Wells's house when she saw Blond and a taller man she could not

-1-

identify. Blond aimed a gun at her and insisted that she not move, then the two men entered the house with Wells, after which a shot rang out. As she drove away, Blond fired several shots at her.

Thompson, who was also with Wells on the night of the offense, identified both defendants as having appeared at Wells's house on the night in question. Thompson stated that Blond had a gun in view; she admitted having previously been inconsistent about whether Hare also had a gun, but clarified that he had his hand in his pocket in a way that suggested to her that he was also armed. According to Thompson, Blond initially pointed his gun at Wells's housemate and herself, then ultimately shot at her as she attempted to flee from the scene.

Jerry Carter, who was Wells's housemate, also identified both defendants as having been involved in the incident in question, and testified that they both displayed guns at the time. According to Carter, Blond put his gun to Carter's head, and Hare pointed his gun at Wells. Carter testified that Wells "just shook his head and he want to shut the door," and "when he shut it, [Blond] had . . . got to shooting," adding that Blond "shot in the door" and Wells made a sound suggesting that he had been struck, after which defendants "pushed the door open and then they both just got to shooting in the house." Carter added that he "took off," and that as he did so, defendants "got to shooting at the car and shooting at me."

The forensic pathologist who performed an autopsy on Wells's body described three bullet wounds, and recovered two bullets. He opined that two of the wounds were not immediately life threatening, but that "the wound to the back was the most immediately fatal." A search of Blond's place of residence turned up a Glock handgun and two magazines for it. A firearms expert testified that several spent cartridges recovered from Wells's premises were discharged from that Glock.

Hare did not testify. Blond, however, testified that he did not bring a gun to Wells's home, but that Wells produced a Glock and brandished it threateningly, causing Blond to struggle with Wells over that weapon, which went off in the melee. Blond added that Hare also had a gun at the time, and that Hare fired it once—not at any person but instead in apparent hopes of putting an end to the fighting that was taking place between Blond and Wells.

The jury found both defendants guilty of first-degree murder, MCL 750.316(1)(a), two counts of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Both defendants subsequently received lengthy sentences of imprisonment.

Defendant Blond appeals as of right in Docket No. 344434, and defendant Hare appeals as of right in Docket No. 344440. Both defendants seek appellate relief solely on the grounds that their respective trial attorneys were ineffective.

## II. ASSISTANCE OF COUNSEL

The United States and Michigan Constitutions guarantee a criminal defendant the right to the assistance of counsel. US Const, Ams VI and XIV; Const 1963, art 1, § 20. The

constitutional right to counsel is a right to the *effective* assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that, under an objective standard "counsel made an error so serious that counsel was not functioning as an attorney as guaranteed by the Sixth Amendment." *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). The defendant must further show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair or unreliable. *People v Poole*, 218 Mich App 702, 718; 555 NW2d 485 (1996). A defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

## A. DEFENDANT BLOND

Blond premises his claim of ineffective assistance solely on his trial attorney's failure to seek introduction into evidence of photographic images of Wells that Blond attributes to a social networking website. Blond's offer of proof is a compendium of four images he describes as showing Wells "proudly displaying several guns." Blond further asserts that a firearms expert would testify that one of the handguns thus depicted "is not inconsistent with," and another "cannot be eliminated as," the gun that killed Wells.

In this case, assuming without deciding that Blond has accurately indicated what the images in question depict, and assuming that he could have established a proper foundation for their admission at trial, we conclude that the images would have been of minimal evidentiary value to his defense.

Three eyewitnesses testified that Blond came upon the scene already armed with, and menacingly brandishing, a gun. None of those witnesses offered specifics concerning the brand or configuration of the weapon. Accordingly, evidence that Wells had possessed firearms at some unspecified earlier time—including that he appeared proud to pose with such firearms— does nothing to undercut those eyewitnesses' accounts of Blond having aggressively displayed a gun at the onset of the incident in question.

Blond implies that the depiction of Wells in possession of an apparent Glock of the sort associated with his homicide tends to place that weapon in Wells's hands, not Blond's, as their confrontation began. But Wells's possession of a particular kind of Glock at some unspecified time in the past hardly eliminates the possibility that Blond brought his own Glock to the scene. Indeed, a Glock linked to the subject shooting, and two magazines for it, were found in the search of Blond's place of residence; his possession of the subject Glock and one magazine for it would comport with Blond's account of having seized that weapon from Wells defensively and leaving the premises with it, but the second magazine suggests more purposeful possession and storage of a gun than as an incidental consequence of a recent need to force it from the hands of a would-be aggressor.

Moreover, to the extent that the social-networking images in question indicate that Wells earlier possessed a Glock of the sort in evidence, those images do not eliminate the possibility that Blond brought a different gun, or even no gun, to the scene, but in the fracas with Wells wrestled the latter's Glock from him, then elected to use it as a murder weapon.

Had such evidence been offered and introduced, it likely would have had little influence on the jury's resolution of the credibility contest between Blond and the three eyewitnesses regarding whether Blond arrived at the scene possessing a gun and displaying aggression. Introducing evidence that Wells at some undetermined earlier time himself possessed a gun similar to the one that ended up killing him would have been of no assistance to Blond in connection with his account of the subject gun's having discharged once, but only once, as he struggled with Wells over it. The forensic evidence indicated that Wells was shot three times. Blond's failure to offer an explanation for Wells having suffered more than a single bullet wound left a gap in his story of having acted only defensively, with or without evidence that Wells was the owner of that, or any other, Glock.

Because, with this issue, Blond has failed to bring to light any missed opportunity on defense counsel's part, let alone one that might have been outcome-determinative, we reject his claim of ineffective assistance of counsel.

## B. DEFENDANT HARE

Hare was tried jointly with Blond, before a single jury. Hare premises his claim of ineffective assistance solely on his trial attorney's failure to move the trial court for separate trials.

In criminal cases with multiple defendants, public policy strongly favors joint trials. See *People v Carroll*, 396 Mich 408, 414; 240 NW2d 722 (1976). "Joinder is appropriate if the offenses are related" in the sense of stemming from the same conduct or transaction, or a series of connected acts, or a series of acts composing a single scheme or plan. MCR 6.120(B)(1). A criminal defendant, however, "is entitled to a trial separate and apart from a codefendant who it appears may testify to exculpate himself and criminate the defendant seeking a separate trial." *People v Hurst*, 396 Mich 1, 4; 238 NW2d 6 (1976).

Although "a joint trial of codefendants presenting antagonistic defenses has serious negative implications for the accused," severance is required only when the defendant "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346-347; 524 NW2d 682 (1994), amended on other grounds 447 Mich 1203 (1994). A primary concern is to avoid putting each defendant in the position where that defendant must seek to establish the culpability of the other, and defend in turn against the other's similarly antagonistic defense, while also defending against the prosecution's case. *Id.* at 349. Accordingly, "[i]nconsistency of defenses is not enough to mandate severance; rather, the defenses must be mutually exclusive or irreconcilable." *Id.* (cleaned up).

In this case, Hare frames this issue as the failure of defense counsel to move for separate trials where no aspect of the proceedings militated in favor of joinder. Because jointly trying

codefendants is the norm, however, with bifurcation of proceedings taking place only where there is good reason to depart from that norm, the question is not whether there was a strategic advantage in having a joint trial, but rather whether defense counsel failed to pursue some strategic advantage that a separate trial might have offered.

Hare states in his brief on appeal that "[w]hile the defenses may not have been directly antagonist the joinder deprived Mr. Hare of a fair trial," thus admitting that this situation did not involve entirely inconsistent defenses, even while insisting nevertheless that the case called for separate trials.

Hare asserts that the testimony was "confusing," and points out, among other things, that one eyewitness was not able to identify him as one of the participants in the subject incident, and that another testified inconsistently concerning whether he had a gun, but does not explain how any such confusion might have been avoided had there been separate trials. Hare similarly protests that "Blond's testimony put a gun in Mr. Hare's hand and he told the jury that Hare fired at least one shot," but does not explain why his jury would not have heard the same testimony had he been tried separately.

"[A] fair trial does not include the right to exclude relevant and competent evidence." *Id.* at 362 (cleaned up). "A defendant normally would not be entitled to exclude the testimony of a former codefendant if the . . . court did sever their trials," and thus "relevant and competent testimony" is not rendered unfairly prejudicial only "because the witness is also a codefendant." *Id.* at 361 (cleaned up).

In this case, Hare identifies no testimony in the trial-court proceedings that would have been barred from his jury's consideration had there been separate trials. Nor did this case present the hazard where "a single jury may convict one defendant, despite the absence of proof beyond a reasonable doubt, in order to rationalize the acquittal of another." *Id.* at 360. Although Blond testified that Hare was in possession of a gun at the relevant time, he stated that Hare fired it only once, and not at any person but instead in apparent hopes of breaking up a fight. Blond in fact offered his own innocent explanation for obtaining and shooting the gun that killed Wells, and attributed no aggression at all to Hare.

Hare asserts that Blond's testimony "was so inherently unbelievable that it likely caused the jury to essentially believe that any defense presented by Mr. Hare should be given little to no weight." But he does not explain why unbelievable testimony from one codefendant would itself necessarily undercut the defense posture of another. In fact, Hare's defense attorney encouraged the jury to credit Blond's testimony while arguing that Hare came to the scene of the shooting for peaceful purposes and did not shoot, or otherwise assault, anyone.

Because joint trials of codefendants are the norm, and Hare has failed to show that he and Blond forced their jury to choose between mutually antagonistic positions, or otherwise that his defense was hampered, or the prosecutor's case unjustifiably bolstered, by resort to a joint trial, he has failed to show that a motion for severance would likely have succeeded below, and thus that the lack of such a motion constituted ineffective assistance of counsel. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford