*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 22, 2022

Plaintiff-Appellee,

v

No. 356943
Ionia Circuit Court
LC No. 2019-017905-FH

CAMERON MATTHEW WEBB,

Defendant-Appellant.

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

A jury found defendant guilty of assaulting a prison employee in violation of MCL 750.197c(1). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 43 months to 10 years' imprisonment. Defendant appeals of right his conviction and sentence. We affirm both.

## 1. BACKGROUND FACTS AND PROCEDURE

This case stems from an incident at the Michigan Reformatory, a Michigan Department of Corrections prison in Ionia. Defendant initially refused a female corrections officer's order to come over to her for a routine identification and pat-down search called a "shakedown." Defendant eventually went over to the officer but said: "You're not going to stop me from paroling. I'm paroling in 27 days, bitch." Because of defendant's statements, the officer did not feel comfortable completing the shakedown or trying to put defendant into handcuffs herself, so she called for assistance. Two officers responded to escort defendant to the segregation unit. On the way there, defendant lunged at and spat in the face of one of the officers. Additional officers were needed to complete the escort. The events were video recorded and played for the jury to view at the trial.

The jury rejected defendant's denial of the incident and found him guilty of assaulting a prison employee in violation of MCL 750.197c. The investigating agent who interviewed defendant recommended assessing defendant 25 points under Offense Variable (OV) 19, which

-1-

pertains to a threat to the security of a penal institution.[1]  Defendant attended the sentencing hearing via Zoom from the Ionia County Jail.  At the sentencing hearing, the parties agreed to amend two prior record variables resulting in a reduction of the sentencing guidelines minimum range to 12 to 36 months.  The court and the parties did not address the assessment of points for OV 19.  The prosecution requested that the trial court sentence defendant to 36 months to the statutory maximum of 10 years' imprisonment.  Defense counsel argued for a minimum sentence in the middle of the sentencing guidelines range on the ground that defendant had not physically assaulted the prison employee or physically injured him.  The trial court addressed defendant and reflected upon his extensive criminal history which indicated to the court that defendant had contempt for authority.  The court also considered the trial evidence including the video recording of the incident including defendant's disrespectful treatment of the female officer at the outset which signified to the court that defendant lacked respect for authority and women, particularly the female officer by calling her names and disrespectfully eating an apple when she called defendant over.  The trial court, therefore, departed upward from the sentencing guidelines range and sentenced defendant to a minimum 43 months' imprisonment to the statutory maximum of 10 years with credit for 506 days served.  This appeal followed.

## II.  ANALYSIS

## A.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution presented insufficient evidence to prove an essential element of the crime of assaulting a prison employee.  Defendant contends that spitting is not an act of violence or a threat of violence.  We disagree.

Defendant's argument essentially is that Michigan's Model Criminal Jury Instructions (M Crim JI) 17.14 arbitrarily defines "violence" to include conduct "so as to . . . embarrass."  He takes issue with the definition because the case cited in support of the definition, *People v Burk*, 238 Mich 485, 487; 213 NW 717 (1927), says nothing about the victim being embarrassed, and caselaw that followed, including *People v Terry*, 217 Mich App 660, 662-663; 553 NW2d 23 (1996), which held that spitting on a prison hearing officer clearly constituted an act of violence, only seized on M Crim JI 17.14's definition of "violence."  He contends that, had the M Crim JI and courts used a dictionary definition of violence, they would have found no reference to embarrassing a victim.  Defendant asks this Court to indicate that, although it is obligated to follow *Terry*, that *Terry* was erroneously decided.

---

[1] The agent noted in the Presentence Investigation Report (PSIR) narrative that defendant had been charged with several new crimes since his release from prison and while on bond during the pendency of this case, including resisting and obstructing a police officer, disorderly conduct, assault and battery, controlled substance possession, aggravated stalking, and another assault of a prison employee.  The agent also noted that defendant failed to appear for three hearings in this case before ultimately remaining lodged at the Ionia County Jail.  At defendant's sentencing, defense counsel conceded that defendant had pending charges against him that arose following his release from the correctional facility.

This Court reviews de novo questions of statutory interpretation. *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). This Court also reviews de novo challenges regarding sufficiency of the evidence. *People v Evans*, 335 Mich App 76, 85; 966 NW2d 402 (2020). On review of an evidence sufficiency challenge, the Court must view the evidence "in the light most favorable to the prosecutor" to determine "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted).

The statute governing the charge of assaulting a prison employee, MCL 750.197c(1), states in pertinent part, as follows:

> A person lawfully imprisoned in a jail, other place of confinement established by law for any term, or lawfully imprisoned for any purpose at any other place . . . who . . . through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement . . . is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $2,500.00, or both.

The crime of assault of a prison employee requires proof that the defendant "(1) was lawfully imprisoned in a place of confinement, (2) used violence, threats of violence, or dangerous weapons to assault an employee of the place of confinement or other custodian, and (3) knew that the victim was an employee or custodian." *People v Kammeraad*, 307 Mich App 98, 145; 858 NW2d 490 (2014); see also MCL 750.197c(1). The term "violence," as used in MCL 750.197c, has been defined as meaning "any wrongful application of physical force against another person so as to harm or embarrass him." *Terry*, 217 Mich App at 662.

Because MCL 750.197(c)(1) requires the use of violence, threat of violence, or dangerous weapons, defendant challenges the definition of "force and violence" featured in M Crim JI 17.14 which states, "As used in these instructions, the words 'force and violence' mean any use of physical force against another person so as to harm or embarrass [him / her]." Defendant points out that the model instruction's reference guide cites *Burk*, 238 Mich at 487, which does not mention the word "embarrass." In *Burk*, a case in which the defendant sat accused of using a dangerous weapon, the defendant contested the trial court's jury instructions for felonious assault and the lesser-included offenses of assault and battery and simple assault. *Id.* The trial court charged the jury by reading the applicable statute of the Compiled Laws of 1915, which stated,

> Whoever shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to commit great bodily harm less than the crime of murder, shall be deemed guilty of felonious assault, and upon conviction shall be punished. [*Id.* at 487.]

The court instructed that the weapon used in that case, an iron bar, constituted a dangerous weapon, and further instructed that in cases involving a "[b]attery, the person has to be—some damage has to be done to the person himself, some corporal hurt; in other words, an assault may be made without striking a person, like an attempt to strike. In other words, this is what we call the major crime, felonious assault." *Id.* at 488.

-3-

Defendant argues that the term "embarrass" is not contemplated in *Burk* making it improper for that term to be featured in the criminal jury instruction. Indeed, in *Burk*, our Supreme Court did not state the term "embarrass," but neither did it consider, explain, or provide a definition of the term "violence" or "threats of violence," terms not in the applicable 1915 statute or the instruction given by the lower court. Further, the Court, obviously, did not consider, explain, or provide a definition of the term "violence" as used in MCL 750.197c, which first became law in 1966 and has been amended several times since. Nor did the Court consider, explain, or provide a definition of "force and violence," the terms defined in M Crim JI 17.14.[2]

In *Terry*, this Court explained what constitutes violence under MCL 750.197c:

In *People v Boyd*, 102 Mich App 112; 300 NW2d 760 (1980), this Court reviewed whether throwing a liquid alleged to be urine constituted "violence" under the statute. The *Boyd* Court looked to the Criminal Jury Instructions to help define violence as "any wrongful application of physical force against another person so as to harm or embarrass him." *Id*. at 116. Thus, this Court found that the defendant violated the act by throwing liquid that was alleged to be urine. There is no logical distinction that can be drawn between the action of the defendant in *Boyd* and defendant's act of spitting on Palus. In this case, it is clear that defendant spit on Palus to "harm or embarrass him," and, thus, his action constituted violence under the statute. Defendant's claim to the contrary is without merit.

Defendant next contends that no "assault" occurred under the statute because Palus did not suffer any physical injuries. We disagree. A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Robinson*, 145 Mich App 562, 564; 378 NW2d 551 (1985). A battery is the consummation of an assault. *People v Rivera*, 120 Mich App 50, 55; 327 NW2d 386 (1982). For assault and battery, intent is an element of the crime to be proved. 2A Michigan Criminal Law & Procedure, Assaults (2d ed, 1992 rev'ed), § 1024, p 668. Thus, the prosecution needed only to prove that defendant intended to spit on Palus; the lack of physical injury was irrelevant. See *People v Datema*, 448 Mich 585, 592,

---

[2] We note that the Institute of Continuing Legal Education (ICLE) commentary for M Crim JI 17.14 point out that the definition of assault in M Crim JI 17.1 does not mention "embarrassing touching" but instead uses the term "offensive touching." See Michigan Model Criminal Jury Instructions with ICLE Commentary (ICLE, November 2021 update), p 1091. The commentary recommends, "Counsel should consider a request to modify [M Crim JI 17.14] to delete the word 'embarrass' and replace it with 'offend' to be consistent with these instructions." *Id*. The parties did not make such a request in this case. Indeed, the parties' respective counsel stated no objections to the jury instructions as given. When a party expresses satisfaction with the instructions as given to the jury, the party has waived any claim of error respecting the instructions. *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017). Such waiver extinguishes any error and precludes appellate review. *People v Carter*, 462 Mich 206, 215, 219; 612 NW2d 144 (2000).

n 8; 533 NW2d 272 (1995). The intent of the defendant may be established by circumstantial evidence. *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). In this case, the evidence showed that, as defendant was about to leave the hearing, "[h]e yelled profanities at [Palus,] stood up, and then spit on Mr. Palus." This evidence was clearly sufficient to support a finding that defendant intentionally spit on Palus. Because spitting upon a person is a battery, which is a consummated assault, spitting falls within the prohibitions of the statute. Accordingly, defendant's contention that no "assault" was shown under MCL 750.197c is without merit. [*Terry*, 217 Mich App at 662-663.]

In *Boyd*, the case on which *Terry* relied, this Court considered whether throwing urine in a prison employee's face violated MCL 750.197c. This Court explained:

> Defendant argues that even if an assault without an escape attempt is prohibited under this statute, the requisite use of violence or dangerous weapons was not established, requiring affirmance of the dismissal.
>
> We agree with defendant's contention that the phrase "through the use of violence, threats of violence or dangerous weapons" applies to assaults as well as prison escapes. Where we part company is in the definition of the word "violence" and its application to the facts of this case.
>
> Webster defines "violent" as follows:
>
> > "(a) acting with or characterized by great physical force, so as to injure, damage or destroy (b) acting or characterized by force unlawfully or callously used . . . ." Webster's New World Dictionary (2d ed) (1976), p 1586.
>
> CJI 17:2:03 adds further light to the meaning of violence in assaults:
>
> > "As used in these instructions, the words "force and violence" mean any wrongful application of physical force against another person so as to harm or embarrass him."
>
> It is our opinion that the throwing of liquid, alleged to be urine, into the face of another person constitutes the use of "violence", thereby satisfying the requirements of the statute.
>
> Defendant argues that the legislature could not have intended that simple assault and battery would be made a felony by 1976 P.A. 188. We disagree.
>
> The stated purpose of the amendment as expressed in the analyses is to elevate misdemeanant assaults to the status of felonies in order to deter assaults of prison guards. There are only two misdemeanant assault statutes in Michigan, MCL 750.81; MSA 28.276, and MCL 750.81a; MSA 28.276(1), which state:

Sec. 81.  Assault and assault and battery.  Any person who shall be convicted of an assault or an assault and battery where no other punishment is prescribed shall be guilty of a misdemeanor.

Sec. 81a. Any person who shall assault another without any weapon and inflict serious or aggravated injury upon the person of another without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail or the state prison for a period of not more than 1 year, or fine of $500.00, or both.

All of the other assault statutes are enumerated felonies.

Keeping in mind the legislative intent and the plain language of the statute, we see no reason to limit the statute to aggravated assaults.  Had the Legislature wished to restrict the statute in such a manner, it could have easily done so.  [*Boyd*, 102 Mich App at 116-117.]

Defendant argues that this Court should discard *Terry* and adopt a dictionary definition of the term "violence" for interpretation and application of MCL 750.197c, limiting the meaning only to physical force used to injure, damage, or destroy.  He contends such definition would establish that spitting does not constitute the use of violence or the threat of violence, and if this Court so redefines the term, he must be deemed exonerated because, although the prosecution proved that he spit on an employee of the place of confinement, such proof did not suffice to establish that he violated MCL 750.197c because that conduct did not physically injure the officer.

It is well established in common law that spitting on a person is an offensive contact that amounts to an intentional tort of battery.  See generally, *United States v Pruitt*, 999 F3d 1017, 1030 (CA 6, 2021) (Nalbandian, J., concurring) (explaining that the term "battery" includes all offensive touching, including "spitting in someone's face".); see also *Terry*, 217 Mich App at 662-663.  In *Terry*, this Court found persuasive the *Boyd* Court's analysis and held that the defendant prisoner who, after a misconduct hearing spat on the shoulder of the hearing officer, had violated MCL 750.197c, because such conduct constituted violence under the statute.  *Id*. at 662.

The question in this case is not whether spitting entails the use of violent physical force; rather, it is whether spitting constitutes the "use of violence" or "threat of violence" as specified in MCL 750.197c(1).  The dictionary definitions of "violence" means to "injure, abuse, damage, or destroy."  https://www.merriam-webster.com/dictionary/violence (accessed June 22, 2022).  "Injure" can mean "to inflict bodily hurt on," "to impair the soundness of <injured her health>," "to inflict material damage or loss on," "to harm, impair, or tarnish the standing of," "to give pain to <~ a person's pride>," or "to do an injustice to."  See *Merriam-Webster's Collegiate Dictionary* (11th ed).  The applicable definition of the verb "abuse" is "to use or treat so as to injure or damage," while the noun includes a meaning of "physical maltreatment."  *Id*.  To "damage" means causing "loss or harm resulting from injury to person, property, or reputation."  *Id*.  Finally, "destroy" includes actions "to ruin the structure, organic existence, or condition of," "to ruin as if by tearing to shreds," or "to cause ruin or destruction."  *Id*.  Under these definitions, injury, abuse,

damage, and destroy do not necessarily apply only to physical states, but can also affect emotional or mental well-being. The word "harm," for example, means "to damage or injure physically or mentally; to cause harm (physical or mental damage)." https://www.merriam-webster.com/dictionary/harm (accessed June 22, 2022). Violence, therefore, includes conduct that inflicts injury on a person's health, pride, or reputation, or cause fright, shock, *or embarrassment*, all of which can result from being spit upon. We conclude that *Boyd* and *Terry* correctly interpreted MCL 750.197c and properly applied the law. Defendant's argument that this Court incorrectly decided *Terry* lacks merit.

Because the use of violence includes the use of physical force to inflict injury to a person's health, pride, or reputation, or to cause embarrassment, and because spitting can cause all of these harms, particularly by undermining the authority of and respect due to an employee of a place of confinement, the evidence adduced at trial sufficed to establish beyond a reasonable doubt that defendant assaulted a prison employee. The record reflects that the prosecution presented sufficient evidence to establish each of the elements of the charged offense. Accordingly, we affirm defendant's conviction.

## B. PHYSICAL PRESENCE AT SENTENCING

Next, defendant argues that he is entitled to resentencing because he did not waive his right to be physically present for sentencing; instead, he attended via Zoom from jail while his attorney appeared in the courtroom. Defendant argues, alternatively, that defense counsel provided ineffective assistance because he did not object to defendant's remote appearance without a waiver. Both arguments lack merit.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) (citation omitted). To preserve claims of error, a party must object before the lower court. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). To preserve for review by this Court a constitutional error claim that implicates a defendant's due-process rights, the issue must be raised in the trial court. *People v Williams*, 245 Mich App 427, 430-431; 628 NW2d 80 (2001). In this case, defendant did not raise the issue of his physical presence at his sentencing and made no objection to appearing remotely via Zoom. Therefore, he failed to preserve the issue for appellate review.

This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In *Carines*, our Supreme Court explained:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error

resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id.* at 763-764 (quotation marks, alteration, and citations omitted).]

"Plain-error review applies with equal force to all constitutional errors, even those limited and rare constitutional errors deemed structural." *People v Anderson*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 354860); slip op at 4, citing *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

A criminal defendant has a constitutional right to be present during any stage in which his substantial rights may be adversely affected, including at sentencing. *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). For felony defendants, that right includes the right to be physically present at sentencing. *People v Heller*, 316 Mich App 314, 317-318; 891 NW2d 541 (2016). In *Heller*, this Court explained:

Sentencing by video dehumanizes the defendant who participates from a jail location, unable to privately communicate with his or her counsel and likely unable to visualize all the participants in the courtroom. . . . The courtroom setting provides a dignity essential to the process of criminal adjudication. Isolating a defendant from that setting during what may be the most decisive moment of his or her life clashes with the judge's duty to acknowledge the humanity of even a convicted felon. [*Id.* at 319 (quotation marks and citations omitted).]

In 2020, our Supreme Court entered administrative orders regarding court operations in response to the COVID-19 pandemic. In Administrative Order No. 2020-6, 505 Mich xc (2020), entered on April 7, 2020, the Court placed the following provisions into effect:

[T]he Court authorizes judicial officers to conduct proceedings remotely (whether physically present in the courtroom or elsewhere) using two-way interactive videoconferencing technology or other remote participation tools under the following conditions:

• any such procedures must be consistent with a party's constitutional rights;

• the procedure must enable confidential communication between a party and the party's counsel;

\* \* \*

While this order is in effect, and consistent with its provisions, all judges in Michigan are required to make a good faith effort to conduct proceedings remotely whenever possible. [AO 2020-6.]

This order was in effect through July 26, 2021. *Id.* Defendant's sentencing occurred on April 2, 2021.

In *Anderson*, the defendant appeared for sentencing by Zoom without objection. *Anderson*, ___ Mich App at ___; slip op at 4. On appeal, the defendant did not challenge the sentence itself but argued that the denial of his physical presence in the courtroom for sentencing affected the fairness and integrity of the proceeding. *Id*. at ___; slip op at 6, 8. "Although defendant failed to preserve his constitutional claim of error, he has established that the trial court committed a constitutional error, i.e., plain error." *Id*. at ___; slip op at 6. This Court affirmed the defendant's sentence because the record reflected "no evidence, inference, nor indication that defendant's treatment likely would have been different had he been face-to-face with the sentencing judge" and for that reason, the defendant did not meet the third requirement under the *Carines* plain-error test. *Id*. at ___; slip op at 8.[3]

In this case, defendant attended his trial in the courtroom with defense counsel on March 25, 2021. Defendant attended his sentencing via Zoom on April 2, 2021, and his counsel attended in person. Defendant did not raise any objection nor did the court inquire whether defendant waived his presence. Defendant did not expressly waive his right to be present in the courtroom for his sentencing nor did defense counsel object on the record to defendant's appearance remotely from the jail. Defendant now challenges the sentence itself as well as his appearance at sentencing via Zoom. Under *Heller* and *Anderson*, the trial court plainly erred when it sentenced defendant via Zoom without a valid waiver of his constitutional right to be present physically in the courtroom. As in *Anderson*, then, the question becomes whether this plain error affected the outcome of proceedings or the fairness and integrity of the proceeding generally.

Defendant appears to argue that the dignity and public reputation of the proceedings were impacted sufficient to warrant resentencing. He attempts to distinguish his case from *Anderson* by pointing out that (1) the trial court imposed an upward departure sentence, and (2) the fact that before his trial defendant "demonstrated issues when he appeared alone without counsel in the courtroom; so much so, that he had been charged with a crime and counsel sought to disqualify the trial judge because [he witnessed defendant's] alleged behavior" and then at sentencing without having counsel at his side to intervene, defendant became so dismayed by the upward departure and the trial court's opinions about him that he "turned off the camera and then otherwise behaved in an inappropriate manner."[4] Defendant complains that his counsel remained silent and did not ask for an opportunity to counsel him. Defendant does not assert that the plain error affected the outcome of the proceedings other than to offer the conclusory statement that the result of the proceedings would have been different because, if he had been present in the courtroom with his counsel, "it is less likely that he would have behaved inappropriately and it is hard to imagine that counsel would not have at least made an effort to counsel [defendant] to be more respectful."

---

[3] Notably, this Court also held in *Anderson* that sentencing by remote technology was not a structural error. *Id*. at __; slip op at 7.

[4] Defendant was charged with malicious destruction of police property after an outburst following his circuit court arraignment on December 19, 2019, for which defendant appeared from the jail and without counsel. Defendant moved to disqualify the trial court because it allegedly witnessed the event via the Zoom or Polycom video feed.

The record, however, reflects that neither of defendant's inappropriate behaviors at the sentencing hearing, his interruption of the trial court's explanation of the upward departure sentence, or defendant's termination of his attendance, were factors that the trial court considered in sentencing defendant. Accordingly, we are not persuaded that the outcome of the proceedings would have been different had defendant attended the sentencing hearing in person. Respecting defendant's claim that the dignity and integrity of the proceedings were tarnished by his absence from in-person attendance, defendant has only pointed to his own conduct after the imposition of his sentence, but nothing that persuades us that defendant's treatment likely would have been different had he been face-to-face with the sentencing judge. We are unconvinced, therefore, that a reasonable probability exists that, but for the plain error, the outcome of the proceedings would have been different. Because defendant has failed to meet the third prong of the *Carines* test, his assignment of error regarding his remote attendance for sentencing fails. Moreover, the record in this case demonstrates that the trial court conducted the sentencing proceedings in a fair manner and despite defendant's physical absence from the courtroom, the trial court maintained the propriety of the proceedings and preserved the dignity, integrity, and reputation of the court.

We next address whether defense counsel provided ineffective assistance in this context. For many of the same reasons, counsel's performance did not fall below an objective standard of reasonableness, nor did it affect the outcome. The United States Constitution and Michigan Constitution both guarantee to criminal defendants the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. See also *Missouri v Frye*, 566 US 134, 138; 132 S Ct 1399; 182 L Ed 379 (2012); *People v Pickens*, 446 Mich 298, 311; 521 NW2d 797 (1994). This right extends to all critical stages of criminal proceedings in which counsel's absence might deprive the defendant of a fair trial. *People v Buie*, 298 Mich App 50, 61; 825 NW2d 361 (2012). Sentencing is one of these critical stages. *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). The right to counsel includes the right to effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

To establish a right to relief, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted). The objective standard of reasonableness is measured "under prevailing professional norms." *Strickland*, 466 US at 688.

In this case, by the time of defendant's sentencing hearing, remote court proceedings had become a norm under AO 2020-6, as well as later orders from our Supreme Court reaffirming and heavily encouraging the use of video technology whenever possible. See, e.g., Administrative Order No. 2020-19, 505 Mich clxxi (2020). Defendant had already appeared remotely, without objection, for every court proceeding except his preliminary examination, which was held before the pandemic began, and his jury trial. Although conceivable, it is hard to say that in this setting, counsel's performance fell below an objective standard of reasonableness by not objecting to defendant's remote appearance. Even if we assume that defense counsel's performance fell below an objective standard by not objecting to defendant's physical absence from the courtroom, we are not persuaded that, but for defense counsel's deficient performance, the outcome of the

-10-

proceedings likely would have been different. Accordingly, defendant's ineffective assistance claim fails.

## C. UPWARD DEPARTURE

Defendant also argues that the trial court abused its discretion when it sentenced defendant to 43 months to 10 years' imprisonment because his minimum sentence constituted a disproportionate upward departure from the sentencing guidelines minimum range based on inaccurate factors. We disagree.

In *People v Steanhouse*, 500 Mich 453; 902NW2d 327 (2017) our Supreme Court clarified the principles that this Court must apply for review of sentences. The Court explained that the sentencing guidelines are advisory only as prescribed by *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) ("Sentencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.") The Court confirmed that this Court must apply an abuse of discretion standard when reviewing a sentence for reasonableness. *Id*. at 471. A sentence must be proportionate to the seriousness of the matter, not whether it adhered to the guidelines recommended range. *Id*. at 472. A sentence must meet the *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), principle of proportionality, which requires a sentence to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Lockridge*, 498 Mich at 474. Under an abuse-of-discretion standard, however, there is "no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Therefore, as long as the trial court's action falls within a reasonable or principled outcome, we may defer to the trial court's judgment. *Id*. We review a trial court's fact-finding at sentencing for clear error. *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019). "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

"The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *Babcock*, 469 Mich at 263. The principle of proportionality has endured as the standard in which an upward-departing sentence is measured. The "principle of proportionality requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). " '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Id*. at 475, quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). Factors used to determine whether a sentence is proportionate to the offender's conduct include: "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). Finally, when imposing a sentence that departs from the guidelines, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. (quotation marks and citations omitted).

In this case, after amending the calculation of sentencing guidelines minimum range at the parties' request, the trial court determined the guidelines minimum sentencing range of 12 to 36 months' imprisonment. The trial court, however, stated that it found a minimum sentence of 43 months' imprisonment more suitable under the circumstances. The record reflects that the trial court considered defendant's extensive criminal record, his inability to learn from the punishments imposed for his previous convictions, and his contemptuous behaviors leading up to and including the commission of the offense in this case. The court explained on the record to defendant why an upward departure of seven months was proportionate to the seriousness of the offense and the offender in this case.

After giving defendant opportunities to address the court during which defendant pointed out that the victim had forgiven defendant and defendant also requested vocational programming during his time of incarceration, the trial court explained that it had presided over defendant's trial and saw the evidence presented. The court noted that defendant's PSIR indicated that defendant had an extensive documented criminal history dating from when a juvenile to his adulthood that established that defendant had contempt for authority. The trial court found that defendant lacked credibility because he denied his actions despite the video evidence presented at trial that clearly depicted defendant's misconduct. The record supports the trial court's findings. The video evidence established that defendant aggressively lunged at the corrections officer and spit in the officer's face.

The trial court also considered defendant's undisputed numerous misconducts during his time in the custody of the Department of Corrections involving violence, threatening behavior, insolence, disobedience of direct orders, and interference with the administration of rules. The trial court also noted that defendant's demeanor and attitude at the prison demonstrated disdain for females, particularly the female officer who he initially refused to obey and called a bitch, slowly turned for the shakedown, and disrespectfully pulled out an apple and starting to eat it in front of her. The trial court stated that the guidelines did not consider defendant's "prior threatening behavior, both in the institution and while on supervision."

Defendant argues that these reasons were inadequate or mere speculation. When applying the principle of proportionality and the factors articulated in *Dixon-Bey*, however, it is clear that the trial court did not abuse its discretion. The trial court relied upon uncontroverted evidence in the record. Further, the trial court justified on the record its rationale for the 7-month upward departure. The record supports the trial court's reasoning that defendant had failed to learn from his prior punishments, had an extensive criminal history, and the court appropriately noted his unabashed contemptuous behavior in this case, all of which justifiably required additional incarceration to enable defendant to learn to respect authority. The trial court also appropriately considered the evidence that defendant was disrespectful to a female officer which demonstrated his contempt not only for authority but women and the female officer particularly. The record indicates that the trial court based its sentencing decision on the seriousness of the offense and the offender and articulated on the record why the upward departure sentence was more proportionate than one within the calculated guidelines range. The trial court, therefore, did not abuse its discretion when it sentenced defendant to an upward departure sentence.

## D. OV 19 SCORING

Defendant next argues that the trial court erred when it assessed 25 points under OV 19 or alternatively that defense counsel provided ineffective assistance for failing to object to the points. Ordinarily, a trial court's assessment of points for a sentencing guidelines variable is reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Information used to score sentencing guidelines must be accurate. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). In *Lockridge*, 498 Mich at 394, 395 n 31, our Supreme Court explained that upward departure sentences do not implicate the constitutional issue addressed by the Court because such sentences are not based on the guidelines. Analogously, an upward departure sentence cannot be said to rely on improperly scored guidelines. Rather, when a court imposes a sentence outside the sentencing guidelines, as in the case of an upward departure sentence, the court, in its discretion, has determined that the sentencing guidelines range, whether correctly determined or not, is not determinative of the defendant's sentence.

In this case, the trial court imposed a sentence outside the sentencing guidelines minimum range. The trial court appropriately exercised its sentencing discretion without the constraint of the sentencing guidelines and expressed on the record adequate reasons for the sentence it imposed. The scoring of OV 19 and the calculated guidelines range, therefore, although an important consideration as a preliminary advisory guide for sentencing, were not determinative because the trial court ultimately did not rely on improper scoring of the only OV that was assessed points for imposing defendant's 43-month minimum sentence. The record indicates that the trial court based its sentencing decision on the seriousness of the offense and the offender and articulated on the record why the upward departure sentence was justified in this case.

Moreover, we are not persuaded that the trial court erred by assessing 25 points for OV 19. MCL 777.49(a) directs a sentencing court to score 25 points for OV 19 if "[t]he offender by his or her conduct threatened the security of a penal institution [.]" In the context of this case, we review for clear error the trial court's factual determination that defendant's conduct threatened the security of a penal institution, and we review de novo whether defendant's conduct sufficed to assess 25 points for OV 19. See *Hardy*, 494 Mich. at 439. Defendant contends that the brevity or his conduct and his mere spitting on the corrections officer did not warrant assessment of any points for OV 19. Defendant's argument lacks merit because the video and testimonial evidence in this case established that he contemptuously acted toward the female officer and then while being escorted by two officers aggressively lunged at one of the officers and then spat in the officer's face requiring his being taken down and physically moved by officers to the segregation area. The evidence established that defendant's conduct indisputably threatened the security of a penal institution. Therefore, the trial court did not err by assessing defendant 25 points for OV 19.

Defendant argues further that his counsel provided ineffective assistance by not objecting to the scoring of OV 19 at sentencing. Because the trial court did not err by assessing 25 points for OV 19, any objection by defense counsel would have been futile. Failure to make a meritless

objection is not ineffective assistance. Therefore, defendant's ineffective assistance of counsel claim fails.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford