*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RASHED AM BROWN,

        Defendant-Appellant.

UNPUBLISHED
June 6, 2024

No. 365205
Oakland Circuit Court
LC No. 2016-259631-FC

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals, by delayed leave granted,[1] the trial court order denying his motion for relief from judgment. Defendant seeks relief from his June 2017 convictions of: second-degree murder, MCL 750.317; first-degree fleeing and eluding police resulting in the death of another individual, MCL 257.602a(5), and; second-degree fleeing and eluding police resulting in serious impairment of a body function, MCL 750.479a(4). Alternatively, defendant seeks relief from his sentence, as a fourth habitual offender, MCL 769.12, to concurrent terms of 100 to 150 years' imprisonment for second-degree murder, and 19 to 60 years' imprisonment for each of the fleeing and eluding convictions. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This Court summarized the facts of this case in defendant's previous appeal as of right:

        Defendant's convictions arise from a car collision that occurred while defendant was fleeing from police. On July 7, 2016, defendant was driving a stolen Suburban SUV with four passengers in his vehicle . . . . Defendant drove to a Walgreen's pharmacy where [one of the passengers] filled a prescription for cough syrup. Defendant then drove to a nearby CVS pharmacy, where [another

---

[1] *People v Brown*, unpublished order of the Court of Appeals, entered August 24, 2023 (Docket No. 365205).

passenger,] Lee went inside and attempted to fill a fraudulent prescription. . . . When Lee returned to the pharmacy to pick up the prescription, police arrived to arrest Lee for prescription fraud. Defendant, waiting for Lee in the stolen Suburban in the pharmacy parking lot, saw the police officers arrive and drove away at high speed, attracting the attention of the officers.

Deputy Frank McSpadin of the Oakland County Sheriff's Department testified that he saw defendant drive away at an extremely high speed, and therefore followed defendant in a marked police car, activating the car's lights and sirens. Defendant's passengers in the Suburban testified that defendant was driving very fast and ran two stoplights, while they screamed and pleaded with him to stop. Defendant continued to flee from the officer at speeds of 85 to 95 miles per hour. Most of the roads they traveled during the chase had speed limits of 40 or 45 miles per hour. During the chase, defendant repeatedly crossed the center line and passed other vehicles despite a solid, yellow center line. A second police car attempted to block the road in front of the Suburban, but defendant swerved around the police car. As the traffic increased, defendant drove onto the shoulder of the road to pass another vehicle on the right. Defendant then ran a third red light, and in doing so collided with a van driven by Reo Dockter. The dash cam video of the police car recorded the entire pursuit, and the recording was later played for the jury.

Dockter, age 75, was transported to the hospital, but died shortly thereafter as a result of multiple injuries caused by the collision. The collision also resulted in serious bodily injury to one of the passengers in defendant's vehicle . . . , who suffered a broken hip requiring surgery, and a broken wrist. [*People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 340069), pp 1-2.]

After a jury trial, defendant was found guilty of all charges, and the trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to concurrent terms of 100 to 150 years' imprisonment for his second-degree murder conviction, and 19 to 60 years' imprisonment for each of his two fleeing and eluding convictions.

Defendant appealed his convictions and sentences to this Court, and this Court affirmed. *Brown*, unpub op at 1. Thereafter, defendant moved in the trial court for relief from judgment. First, defendant argued he was denied a fair sentencing hearing because his trial counsel pleaded guilty to federal charges on the same date as his sentencing, resulting in his suspension from the practice of law. Defendant also argued that trial counsel's failure to inform defendant or the trial court of his federal indictment created a conflict of interest. Finally, defendant argued his 100-year minimum sentence "excessively exceeded" the sentencing guidelines range, which the trial court failed to adequately justify. In seeking relief from judgment, defendant asserted his appellate counsel was ineffective in failing to raise these issues on direct appeal, which constituted good cause to raise these arguments in a motion for relief from judgment, and he suffered actual prejudice by a miscarriage of justice. The trial court denied the motion and this court granted defendant's delayed application for leave to appeal. *People v Brown*, unpublished order of the Court of Appeals, entered August 24, 2023 (Docket No. 365205).

-2-

We review "a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Id*. at 628-629. A trial court's finding is clearly erroneous when, although there is evidence to support it, this Court on the whole record, is left with a definite and firm conviction a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008).

## II. INEFFECTIVE ASSISTANCE

Before delving into defendant's argument, we first note that on direct appeal, defendant previously raised the issue of ineffective assistance of defense counsel, albeit not for the specific reasons now claimed here. *Brown*, unpub op at 5-8. Under MCR 6.508(D), a defendant bears the burden of establishing entitlement to relief from judgment, and relief is precluded if the motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter," unless the defendant demonstrates both (1) good cause for failing to raise the issue previously and (2) actual prejudice. MCR 6.508(D)(3)(a) and (b). Because defendant could have raised *all* of his ineffective assistance of defense counsel claims in his appeal as of right, he must first demonstrate good cause for failing to do so in order to establishment entitlement to relief from judgment.

Ineffective assistance of appellate counsel can constitute good cause for failing to raise an issue previously. *People v Gardner*, 482 Mich 41, 50 n 11; 753 NW2d 78 (2008). Defendant asserts that his appellate counsel was ineffective for failing to raise the specific claims of ineffective assistance of defense counsel now brought before this Court.

In addressing MCR 6.508(D)(3)(a), "the proper test for assessing whether a defendant has established "cause" excusing a procedural default in postconviction proceedings" is not whether appellate counsel failed to raise an arguable claim. *People v Reed*, 449 Mich 375, 379; 535 NW2d 496 (1995) (BOYLE, J.). "[R]equiring appellate counsel to raise every arguably meritorious issue would undermine the strategic and discretionary decisions that are the essence of skillful lawyering." *Id*. at 387. Instead, a defendant seeking relief from judgment must "overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented" in his direct appeal. See *id*. at 391. Because whether defendant is entitled to relief from judgment is largely dependent on whether appellate counsel could be deemed ineffective for failing to raise the present arguments on direct appeal, we now turn to the specific arguments raised to make that assessment.

Defendant bases his ineffective assistance of defense counsel claim on two assertions. First, defendant claims that defense counsel had been indicted for federal wire fraud during his trial court proceedings and was suspended from the practice of law almost immediately after defendant's sentencing hearing. Second, defendant avers defense counsel operated under a conflict of interest due to his federal indictment. Neither of these assertions have merit.

Generally, the determination whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*,

493 Mich 38, 47; 826 NW2d 136 (2012). Appellate courts review the trial court's factual findings for clear error, and review questions of constitutional law de novo. *Id.*

The constitutional right to counsel is the right to the effective assistance of counsel. US Const, Ams VI and XIV; *Strickland v Washington*, c; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). The right to counsel applies to all critical stages of the proceedings if counsel's absence might deprive defendant of a fair trial. See *People v Buie*, 298 Mich App 50, 61-62; 825 NW2d 361 (2012); see also *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996) (identifying the plea and sentencing stages as critical stages).

The right to counsel is one of reasonably effective assistance; to that end, a defendant who claims ineffective assistance "must show that counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 US at 688. Thus, a defendant must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

A defendant is not, however, automatically entitled to a new trial even if his or her counsel did not provide competent assistance: "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. It is also "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding" because nearly "every act or omission of counsel would meet that test." *Id.* at 693. Rather, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The cumulative effect of several minor errors involving defense counsel's performance can warrant reversal even when the individual errors would not. *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Moreover, certain circumstances involving the assistance of counsel are so likely to prejudice a defendant, actual prejudice need not be demonstrated. These include when counsel was totally absent during a critical stage of the proceedings, *Vaughn*, 491 Mich at 671, or when counsel was burdened by an actual conflict of interest, *Strickland*, 466 US at 692.

In this matter, defendant takes no issue with the manner in which defense counsel represented him and identifies no acts or omissions in counsel's representation that he alleges prejudiced him. Rather, the sole focus of defendant's ineffective assistance claim, rests on the fact that in February 2017, amid defendant's trial court proceedings, defense counsel was indicted in the United States District Court for Eastern Michigan on conspiracy to commit wire fraud charges, 18 USC 371. Defense counsel pleaded guilty to this charge at a hearing five hours after defendant's sentencing hearing, and defense counsel's plea was entered two weeks later. But merely putting forth the facts of defense counsel's indictment and plea does not state a claim for ineffective assistance of counsel. Caselaw has long been clear that to properly assert a claim of ineffective assistance of counsel, a defendant must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US

-4-

at 690. Defendant's failure to identify a single act or omission by defense counsel in his representation of defendant that fell below professional norms makes this Court's denial of his claim of ineffective assistance of counsel short work.

While defendant asserts defense counsel was ineffective because he was suspended from the practice of law during representation of defendant, that is not borne out by the record. MCR 9.120(B)(1), dealing with criminal convictions of licensed attorneys, states:

> On conviction of a felony, an attorney is automatically suspended until the effective date of an order filed by a hearing panel under MCR 9.115(J). A conviction occurs upon the return of a verdict of guilty or upon the acceptance of a plea of guilty or nolo contendere. The board may, on the attorney's motion, set aside the automatic suspension when it appears consistent with the maintenance of the integrity and honor of the profession, the protection of the public, and the interests of justice. The board must set aside the automatic suspension if the felony conviction is vacated, reversed, or otherwise set aside for any reason by the trial court or an appellate court.

Thus, it is only upon *conviction* that an attorney's license is suspended. There has been no evidence presented that defense counsel's license to practice law was suspended at any time during his representation of defendant. Defendant was sentenced prior to his defense counsel's plea hearing in federal court (although they occurred on the same date), and defense counsel's plea was not actually entered until two weeks later.

Moreover, in *Pubrat*, 451 Mich at 596 our Supreme Court "decline[d] to hold that representation by a suspended attorney alone create[d] a reasonable probability of ineffective assistance." The Court reasoned:

> A suspended attorney is an attorney who has been suspended from the practice of law, but is still an attorney. A person who becomes an attorney remains an attorney until formally disbarred or otherwise permanently separated from the bar. A suspension does not alter the formal status as an attorney.
>
> * * *
>
> The suspension of an attorney reflects a decision that the attorney is not permitted to practice law during the period of the suspension, rather than a statement that the attorney is not competent to practice law. [*Pubrat*, 451 Mich at 594-595, 597.]

This is because the focus in assessing a claim of ineffective assistance should be on the "actual assistance received." *Id*. at 596. As such, an attorney's suspension cannot independently establish a claim for ineffective assistance, and a defendant must independently establish the representation fell below the objective standard of reasonableness. *Id*. at 600.

The principle from *Pubrat* is directly applicable to this case. Even if defense counsel was suspended during his representation of defendant, defendant still carries the burden of establishing error that constituted defective representation, *and* that the error effected the outcome of the

proceeding. *Strickland*, 466 US at 688, 694. Defendant's failure to establish either of the above is fatal to his claim of ineffective assistance of counsel.

Turning to the conflict of interest argument, defense attorneys owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. *Strickland*, 466 US at 688, citing *Cuyler v Sullivan*, 446 US 335, 346; 100 S Ct 1708; 64 L Ed 2d 333 (1980). The Michigan Rules of Professional Conduct also preclude an attorney from representing a client if the representation may be materially limited by the lawyer's own interests, unless the lawyer reasonably believes the representation will not be adversely affected. MRPC 1.7(b)(1). However, "there is no automatic correlation between an attorney's theoretical self-interest and an ability to loyally serve a defendant." *People v Smith*, 456 Mich 543, 557; 581 NW2d 654 (1998). When claiming ineffective assistance premised on defense counsel's conflict of interest, a defendant must establish that an actual conflict of interest adversely affected his lawyer's representation. *Cuyler*, 446 US at 350; see also *Smith*, 456 Mich at 557. A "mere possibility of a conflict of interest" "is insufficient to impugn a criminal conviction." *Cuyler*, 446 US at 345, 348, 350. When counsel is burdened by an actual conflict of interest, prejudice to the defendant is presumed. *Strickland*, 466 US at 692; *Cuyler*, 446 US at 345-350.

To avail himself of the presumption of prejudice he seeks, defendant must support his argument of defense counsel's conflict of interest by establishing the alleged conflict "adversely affected his lawyer's representation." *Cuyler*, 446 US at 350. Defendant fails to go beyond the contemporaneousness of defendant's trial and sentencing and defense counsel's indictment and plea hearing, arguing counsel's self-interest *could* have lessened his defense.

In *Smith*, 456 Mich at 556, the defendant argued he was entitled to reversal of his conviction because his attorney was charged with a felony, which remained pending during his representation of defendant, in the same county where defendant's case was heard, which caused a conflict of interest. Our Supreme Court denied the defendant's request for a new trial, finding, "defendant has cited no evidence to suggest that defense counsel actively lessened his defense as a result of his pending felony charge, nor do we find evidence of an actual conflict of interest on the record." *Id*. at 558. Comparing this case to *Smith*, there is even less reason to presume a conflict existed here, when the court systems involved were separate.

In sum, defendant has not established the defense counsel was ineffective simply because he had been federally indicted during his representation of defendant. Defendant has similarly not established that defense counsel's indictment created a conflict of interest. Defendant is thus not entitled to postconviction relief on the basis of ineffective assistance of defense counsel. That being true, appellate counsel was not ineffective for failing to raise the instant arguments concerning ineffective assistance of counsel on direct appeal. *Reed*, 449 Mich at 402 ("[D]efendant's counsel on direct appeal did not render ineffective assistance by failing to raise meritless claims.")]. Defendant is therefore not entitled to postconviction relief for the additional

reason that he cannot establish good cause for not raising, on direct appeal, the arguments raised here concerning defense counsel's alleged ineffective assistance. MCR 6.508(D)(3)(a).[2]

## IV.  SENTENCING

Defendant contends that not only did the trial court ignore the rehabilitative goal of sentencing when imposing his 100 to 150-year sentence, his sentence constitutes cruel and unusual punishment in violation of Article 1, § 16 of the Michigan Constitution.  Defendant also asserts that his sentence is not proportionate and further argues, as he did with his ineffective assistance of counsel claims, that appellate counsel was ineffective for failing to raise all of his sentencing issues on direct appeal.  We disagree in all instances.

We review de novo constitutional challenges to sentencing.  See *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018).  However, where, as here, a defendant did not challenge the constitutionality of his sentence in the trial court, the issue is unpreserved.  We review unpreserved constitutional claims for plain error affecting a defendant's substantial rights.  *People v Jarrell*, 344 Mich App 464, 481; 1 NW3d 359 (2022).  Additionally, we review whether a trial court properly imposed a sentence that was proportionate to the offender and offense for an abuse of discretion.  See *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).  "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome."  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Our Supreme Court has held that unusually excessive imprisonment is forbidden by Article 1, § 16 of the Michigan Constitution.  *People v Parks*, 510 Mich 225, 241; 987 NW2d 161 (2022).  Our Supreme Court has further held "that our Constitution requires that sentencing decisions be proportional."  *Id*.  In our Supreme Court's seminal opinion on the principle of proportionality, *People v Bullock*, 440 Mich 15, 485 NW2d 866 (1992),

> we noted that Michigan courts, in evaluating the proportionality of sentences under the "cruel or unusual punishment" clause, are required to consider: (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically "rooted in Michigan's legal traditions ...."  *Id*. at 33-34.  [*Parks*, 510 Mich at 242]

Proportionality is relevant, however, even when a sentence is challenged on other grounds.  Our Supreme Court has made clear that *all* sentences imposed by the trial court must be proportionate

---

[2] A defendant must establish both "good cause" and "actual prejudice" to obtain postconviction relief.  See MCR 6.508(D)(3)(a) and (b).  Defendant having not shown the "good cause" requirement set in MCR 6.508(D)(3)(a), we need not address whether "actual prejudice" was shown as required in MCR 6.508(D)(3)(b).

to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 474, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Our Supreme Court has recognized four important interests of sentencing: rehabilitation, deterrence, punishment, and protection of society. *People v Broden*, 428 Mich 343, 350; 408 NW2d 789 (1987). Consideration of these policy factors may, however, sometimes oppose each other:

> The rehabilitative function of sentences, with an eye towards returning the offender to society at a future time, is not present in nonparolable life sentences. However, this does not mean that a mandatory life sentence, even if nonparolable, must fail. Other policies, such as deterrence of others, deterrence of the offender, or punishment of the offender, may suffice to deflect a cruel and unusual punishment challenge. [*People v Fernandez*, 427 Mich 321, 339; 398 NW2d 311 (1986).]

Our Supreme Court has found "a trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000). The imposition of the maximum possible minimum sentence without regard to mitigating circumstances can amount to an abdication of discretion. *Milbourn*, 435 Mich at 653.

We first note that defendant's sentence was within the guidelines range for his offense. This Court has long held that a sentence that is within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Thus, defendant is not entitled to relief on his constitutional claim on that basis alone.

Addressing defendant's arguments in any event, defendant next argues that consideration of (1) the mitigating effect of youth on culpability, (2) the greater capacity of the youthful for rehabilitation, and (3) sentencing practices for adolescents in and out of Michigan, indicates his sentences constitute cruel or unusual punishment prohibited by the Michigan Constitution. Const 1963, art 1, § 16. However, appellate counsel's arguments in this regard, indeed the majority of his sentencing arguments, are predicated on the significant factual error that defendant was 20 years old at the time of the offenses. Because the record is clear that defendant was 30 years old at the time of the offenses, we do not address his arguments concerning youth and adolescent sentencing.

Next, looking at the factors stated in *Bullock*, 440 Mich at 33-34, we do not find that defendant's sentence amounts to cruel or unusual punishment. First, the severity of defendant's sentence is not unduly harsh considering the gravity of the offense. Defendant drove a stolen car, with passengers in it, at speeds exceeding 95 per hour while fleeing the police. Defendant sped through red lights in highly trafficked areas, placing a multitude of drivers in danger, before finally crashing into another vehicle, killing the driver of that vehicle, and seriously injuring a passenger in the stolen car. Second-degree murder is one of the most serious offenses that can be committed and the sentence in this case is not unduly harsh considering the severity of that offense.

Second, Michigan permits life sentences for offenses that could be viewed as less serious than second-degree murder. For example, first-degree criminal sexual conduct carries a possible life sentence in some cases (MCL 750.520b(2)(a) and (b)), and a mandatory life sentence without the possibility of parole in some instances (MCL 750.520b(2)(c)). Certain controlled substance violations also carry the possibility of a life sentence. See MCL 333.7401(2)(a)(*i*).

Third, Michigan is not alone in imposing a life sentence, effectively without the possibility of parole, for a second-degree murder conviction. Federal law allows for the imposition of a life sentence for a second-degree murder conviction, 18 USC 1111(b), and other states allow for life sentences without the possibility of parole for convictions of murder in circumstances similar to what Michigan classifies as second-degree. See, e.g., Colo Rev Stat Ann 18-3-102(d), 18-1.3-401; Ga Code Ann 16-5-1(e)(1).

Lastly, while the goal of rehabilitation is rooted in Michigan's legal traditions *Bullock*, 440 Mich 15 at 34, defendant has had many opportunities to show his rehabilitative potential. Defendant, at 30 years old, had six prior felonies and four prior misdemeanors on his record when he committed the instant offenses. Indeed, according to his presentence investigation report, defendant had been discharged from parole only the year prior to committing the instant offenses. As this Court aptly stated in *People v Poole*, 218 Mich App 702, 716; 555 NW2d 485 (1996), defendant "could have realized he had made a gross mistake and have reformed himself after committing his first offense." Defendant's opportunity to rehabilitate began immediately after he committed his first offense, and renewed itself after he committed each of his subsequent offenses.

Having not shown that application of the *Bullock* factors supports his argument, defendant nevertheless argues his sentence is cruel or unusual because it greatly exceeds his life expectancy. Defendant's argument is based, however, on the flawed premise that he, or any defendant, is entitled to an opportunity to be paroled. This premise has been squarely rejected by our Supreme Court. In *People v Merriweather*, 447 Mich 799; 527 NW2d 460 (1994), for example, the defendant challenged his 60 to 120-year sentence for first-degree criminal sexual conduct claiming that is was not proportional and effectively denied him any chance of ever being paroled. In upholding the sentence, the Court stated, "[w]e find no basis [] to conclude that the Legislature intended that all defendants, or even simply this defendant, must be eligible for parole." *Id*. at 809.

This Court also rejected a claim that a 100-year minimum sentence for second-degree murder was cruel or unusual punishment. In *People v Bowling*, 299 Mich App 552; 830 NW2d 800 (2013), this Court found:

> Defendant contends that his sentences are cruel or unusual because of his age, 49 years old, which effectively means he will spend the remainder of his life in jail. Yet, defendant incorrectly assumes that he is entitled to parole. That assumption is not supported by Michigan law. . . . [*Id*. at 558]

Thus, defendant's 100- to 150-year sentence is not invalid just because it exceeds his life expectancy. The fact that the sentencing guidelines allow for a minimum term of imprisonment of 100 years is indicative of legislative intent for a term of years sentence that eliminates the

possibility of parole, and all defendants need not be eligible for parole. *Merriweather*, 447 Mich at 809.

As previously indicated, while ineffective assistance of appellate counsel can constitute good cause for failing to raise an issue previously, *Gardner*, 482 Mich at 50 n 11, defendant's argument that his sentence was cruel or unusual has no merit. Defendant's appellate counsel did not render ineffective assistance on direct appeal by failing to raise this meritless claim. *Reed*, 449 Mich at 402.

Moving on from his constitutional argument, defendant next contends that his sentence is not proportionate. Notably, at the time defendant's case was pending on direct appeal, MCL 769.34(10) precluded any review of the proportionality or reasonableness of a sentence that, like defendant's, was within his or her calculated guidelines range. MCL 769.34(10) stated, in relevant part:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.

However, in *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023), our Supreme Court held MCL 769.34(10) was unconstitutional insofar as it precluded proportionality review of within-guidelines sentences. Now, under *Posey*, within-guidelines sentences are reviewable to determine whether the sentence is proportionate to the seriousness of the circumstances surrounding the offense and to the offender (i.e., reasonable). *Posey*, 512 Mich at 356, quoting *Milbourn*, 435 Mich at 636. However, proportionality is presumed in these situations, and a defendant bears the burden of demonstrating otherwise. *Posey*, 512 Mich at 357.

Controlling law at the time of defendant's direct appeal having precluded a challenge to the proportionality of defendant's sentence, defendant's appellate counsel cannot be deemed ineffective for failing to have raised such a challenge. Moreover, defendant's direct appeal was concluded, and his conviction became final, on February 4, 2020,[3] before *Posey* was decided in 2023. While judicial decisions are generally to be given complete retroactive effect, when a decision announces a new rule, retroactive application *does not* extend to cases which have already become final, because, "at some point, the rights of the parties should be considered frozen and a conviction ... final." *People v Barnes*, 502 Mich 265, 268; 917 NW2d 577 (2018) (citation omitted).

While defendant has not provided this Court with any authority indicating why we should not consider *Posey* to have adopted a "new rule," thus rendering a proportionality review to his within-guidelines sentences unavailable to him, both parties have proceeded as though *Posey* does apply retroactively to this matter. This Court will thus do the same, assuming, without deciding, that defendant is entitled to a review of his sentence under a *Posey* presumption of proportionality.

---

[3] The date our Supreme Court denied leave to appeal. *People v Brown*, 505 Mich 976 (2020).

Defendant concedes that the trial court took into consideration the seriousness of the circumstances surrounding the offense when imposing his sentence. *Milbourn*, 435 Mich at 636. He further concedes that his was a very serious offense. Defendant argues, however, that the trial court did not consider defendant's background.

Notably, while sentencing courts must justify the sentence imposed in order to facilitate appellate review, there is no requirement that a sentencing court "give a detailed on-the-record explanation of one or more specific factors." *People v Boykin*, 510 Mich 171, 192; 987 NW2d 58 (2022). At defendant's sentencing hearing, the trial court stated that defendant had six prior felonies and four prior misdemeanors on his record. The trial court also recognized that defendant had previously been in jail and on probation, and had twice been in prison. On the positive side, the trial court noted that defendant had enrolled in community college in 2013. Defense counsel also pointed out that defendant had family support.

The trial court also indicated that it had reviewed the presentence investigation report, although defendant had chosen not to participate with probation in preparing the report. Even though not specifically mentioned by the trial court, other facts appearing in the report included that defendant was unemployed at the time of the instant offenses, and had a multitude of driving offenses on his record. The specific background facts recognized by the trial court, in addition to the facts stated in the presentence investigation report, are sufficient for the trial court to have found defendant's sentence to be proportional to defendant, and defendant has failed to overcome the presumption that the sentence imposed was proportional. *Posey*, 512 Mich at 357. As a result, defendant cannot show that he was prejudiced by appellate counsel's failure to raise this argument on direct appeal. MCR 6.508(D)(3).[4]

In sum, defendant's sentence does not constitute cruel or unusual punishment. His sentence is also proportionate such that the trial court did not abuse its discretion in imposing the sentence it did, and appellate counsel was not ineffective in failing to challenge the constitutional, proportionate sentence, particularly when binding authority held that defendant's within-guidelines sentence was not appealable at the time defendant's appeal as of right was filed. Finally, given the above, there was no plain error affecting defendant's substantial rights. With every

---

[4] A defendant must establish both "good cause" and "actual prejudice" to obtain postconviction relief. See MCR 6.508(D)(3)(a) and (b). Defendant having not shown the "actual prejudice" requirement in MCR 6.508(D)(3)(b), we need not address whether "good cause" was shown as required in MCR 6.508(D)(3)(a).

argument for relief from judgment unsustainable, the trial court was proper in denying relief from judgment.[5]

Affirmed.

/s/ Deborah A. Servitto
/s/ James Robert Redford

---

[5] Defendant additionally briefly argues the trial court sentenced him according to an impermissible "local policy." Our Supreme Court has stated a judge may not impose a sentence solely to implement a "local policy" of sentencing. *People v Chapa*, 407 Mich 309, 311; 284 NW2d 340 (1979). However, defendant has provided no support for his argument. It is not sufficient for a party to simply assert an error and then leave it up to this Court to discover and rationalize the basis for his claims. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).